**Theodore M. SMITH Plaintiff,**

v.

**David PLATI, individually and in his official capacity as Assistant Athletic Director for Media Relations of the University of Colorado; the University of Colorado; and the Regents of the University of Colorado, Defendants.**

Civ. A. No. 99–K–491.

United States District Court,
D. Colorado.

July 22, 1999.

Theodore M. Smith, Denver, CO, pro se.

Joanne M. McDevitt, Stephen Zweck–Bronner, David P. Temple, Office of Uni-

versity Counsel, Denver, CO, for Regents of University of Colorado, David Plati.

Kevin Kuhn, Patrick T. O'Rourke of Montgomery, Little & McGrew, P.C., Englewood, CO, for David Plati.

## MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS TO DISMISS

KANE, Senior District Judge.

The Plaintiff, Theodore M. Smith, filed this case in the District Court, Boulder County, Colorado, on February 19, 1999. Defendants removed it to this court on March 11, 1999. Jurisdiction exists over the third claim for relief under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 1983 [1] (civil rights). Supplemental jurisdiction exists under 28 U.S.C. § 1367 over the pendent state claims, the first and second claims for relief.[2]

Smith is a lawyer appearing *pro se*. He operates an Internet website known as "Netbuffs.com," which supplies information about University of Colorado varsity athletic programs to the general public.

The website began operating on September 2, 1997. Defendant David Plati (Plati) is Assistant Athletic Director for Media Relations at the University of Colorado at Boulder. The University of Colorado, a state higher education entity, is governed by the Regents of the University of Colorado (together, the University).

Smith claims (1) Plati, in his individual and official capacities, arbitrarily and capriciously denied him and Netbuffs.com "media" status at the University of Colorado and seeks an order under Colorado Rules of Civil Procedure Rule 106 [3] declaring that he be recognized as "media" and "press" by Plati and the University; (2) Plati, individually and officially, and the University denied him records that are subject to disclosure under the Colorado Open Records Act, Colo.Rev.Stat. § 24–72–201 *et seq.* (1998) [4] and seeks a mandatory injunction requiring the University to provide him with certain records and documents; and (3) Plati, individually and officially, deprived him of "rights and privileges and enjoyment in retaliation for Smith's publication on the Internet," (Second Am. Compl. ¶ 29), and seeks compen-

---

1. Although the Second Amended Complaint does not mention any federal statute, in his motion for leave to proceed with limited discovery filed on April 28, 1999, Smith acknowledges his third claim for relief is under 42 U.S.C. § 1983. (Mot. Leave Proceed Limited Discovery at 3.)

2. Jurisdiction to hear the first claim may exist under 28 U.S.C. § 1331 as well. The first claim describes Plati's actions as "arbitrary and capricious and contrary to the Constitutions of the United States of America and State of Colorado," yet characterizes this as a "state" cause of action. Accordingly, it asks for declaratory relief under Colo. R. Civ. P. Rule 106. However, before reaching Rule 106, the court must decide if there is a Constitutional violation which justifies declaratory relief. Thus, although the Colorado Rule may provide the remedy, it would only be available upon proof of a violation of the Constitution of the United States, a federal question.

3. Colorado Rules of Civil Procedure, Rule 106 reads in pertinent part: "[R]elief may be obtained in the district court by appropriate action under the practice prescribed in the Colorado Rules of Civil Procedure ....

[w]here the relief sought is to compel a lower judicial body, governmental body, corporation, board, officer or person to perform an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such lower judicial body, governmental body, corporation, board, officer, or person. The judgment shall include any damages sustained."

4. Colorado Revised Statutes Section 24–72–201 (1998) states: "It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law." Section 24–72–202 defines "public records" as "all writings made, maintained, or kept by the state, any agency, institution, or political subdivision of the state ... and held by any local government-financed entity for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds." No exceptions specified under part 2 apply to this case.

satory and exemplary damages against Plati, as well as injunctive relief.

On March 11, 1999, the University filed a motion to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) (for lack of subject matter jurisdiction) or 12(b)(6) (for failure to state a claim). On March 16, 1999, Plati, in his individual capacity, followed suit and filed a motion to dismiss under the same rules of federal procedure. In the interim, I granted Smith leave to depose Plati to elucidate the issue of qualified immunity. The deposition was taken on May 13, 1999. Following the deposition, Smith and Plati filed supplemental briefs. Smith did not, however, seek permission to file a further amended complaint. I heard oral argument on the motions to dismiss on June 23, 1999. For the reasons stated below, I grant the motions.

## I. Factual Allegations.

The dispute between Smith and Plati centers on whether the Office of Athletic Media Relations for the University of Colorado must allow Smith access to information about its varsity sports programs so he can effectively operate his website.

According to Smith, from the time of the inception of his website until approximately August 1998, the University provided him with the same access and privileges afforded to members of the press. This allowed him ample opportunity to take photographs, interview players and coaches, and copy documents which he could then post on his Internet website. Starting in August 1998, however, Plati purportedly began a course of conduct designed to limit Smith's access to publishable information. Specifically, Smith avers, Plati (1) denied him resources and documents routinely given to members of the press; (2) required payment for schedules, press releases, and photographs ordinarily given freely to other members of the public; (3) prevented the distribution of notices advertising Netbuffs.com; (4) threatened to copyright basic information such as varsity sports schedules; and (5) attempted to dissuade his attorney from de-

fending him in a related criminal action. (Second Am. Compl. ¶ 15.)

## II. Applicable Standard for Motion to Dismiss.

Defendants assert this case must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because they are both immune from suit in civil action. The University claims (1) it is not a "person" for the purposes of 42 U.S.C. § 1983, and therefore does not fall under the statute's auspices, and (2) the Eleventh Amendment bars Smith from seeking either damages or injunctive relief. Plati argues he is entitled to qualified immunity because his actions were taken on behalf of the University in the course and scope of his duties as Assistant Athletic Director for Media Relations. Both the University and Plati contend their immunity defenses bar this court, or any other, from asserting subject matter jurisdiction over this case.

Alternatively, Defendants seek dismissal of the complaint for failure to state a claim under Rule 12(b)(6). Dismissal is appropriate under Rule 12(b)(6) "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 (10th Cir.), cert. denied, — U.S. ——, 118 S.Ct. 55, 139 L.Ed.2d 19 (1997). The University and Plati assert, since the Eleventh Amendment and the doctrine of qualified immunity respectively protect them from actions performed in an official capacity, no set of facts presented by Smith, in support of his three claims, entitles him to relief.

In considering a motion to dismiss, the task is necessarily limited. One should not consider whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. "It is well established that, in passing on a motion to dismiss, whether on

the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973).

Additionally, as Smith is proceeding *pro se,* I must construe his complaint and other filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). "The Tenth Circuit has considered this to mean that if the court can reasonably read the pleading to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Griego,* 896 F.Supp. 1043, 1046 (D.Colo. 1995) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)).

## III. *Merits.*

The Second Amended Complaint is not a model of clarity. It does not differentiate the claims alleged against Plati in his official capacity from those against him in his individual capacity. At oral argument, Smith indicated he intended to sue Plati in his official capacity on all three claims. Although the motion to dismiss by Plati in his individual capacity addresses both the first and third complaints, at oral argument, counsel for Plati stated the only claim pled against Plati in his individual capacity was the third claim under 42 U.S.C. § 1983. Smith did not contest this assertion; however, applying a liberal pleading standard, I address both the first and third claims as against Plati individually. Accordingly, I address claims one and two as they apply to the University; claims one, two, and three as they apply to Plati in his official capacity; and claims one and three against Plati in his individual capacity.

### A. *University.*

Smith names the University as a Defendant under his first and second claims for relief. I find the Eleventh Amendment entitles the University to absolute immunity on these claims.

The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This amendment embodies the principle of sovereign immunity and is a constitutional limitation on the federal judicial power established in Article III of the Constitution. It prohibits suits brought by citizens against their own states, as well as those brought by citizens of other states, without the consent of the state itself. *Alden v. Maine,* —— U.S. ——, 119 S.Ct. 2240, 2251, —— L.Ed.2d. —— (1999) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Additionally, a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

Eleventh Amendment immunity may be waived. However, waiver is only recognized "where stated by the most express language or by such overwhelming implication from the test [of a state statute or constitution] as [will] leave no room for any other reasonable construction." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

Difficulties sometimes arise in determining whether a particular suit in fact is a suit against a state. It is clear, however, "that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This is general-

ly described as the arm-of-the-state doctrine which "bestows sovereign immunity on entities created by state governments that operate as alter egos or instrumentalities of the states." *Mascheroni v. Board of Regents of the University of California,* 28 F.3d 1554, 1559 (1994) (quoting Alex E. Rogers, Note, *Clothing State Governmental Entities with Sovereign Immunity: Disarray in the Eleventh Amendment Arm–of–the–State Doctrine,* 92 Colum.L.Rev. 1243, 1243 (1992)). Under this doctrine, the Tenth Circuit has recognized the University of Colorado as a public entity entitled to Eleventh Amendment immunity. *Rozek v. Topolnicki,* 865 F.2d 1154, 1158 (1989).

 Another often confusing aspect of Eleventh Amendment immunity is its applicability to state created law. The Supreme Court definitively resolved this ambiguity in *Pennhurst* by declaring:

> [N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment.... We hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.

*Pennhurst,* 465 U.S. at 121, 104 S.Ct. 900. Accordingly, a federal court must apply Eleventh Amendment immunity to claims based on state law as well as those based on federal law.

It is clear the University is entitled to Eleventh Amendment immunity from Smith's first and second claims for relief. First, as an "arm-of-the-state," the University may not be sued without the state's consent. No such consent was ever granted. Second, the Eleventh Amendment provides absolute immunity regardless of the nature of the relief sought. The fact that the first and second claims for relief seek equitable remedies as opposed to money damages makes no difference. Third, nothing in the record suggests the

University "expressly" or "overwhelmingly implied" it intended to waive the sovereign immunity defense. Accordingly, Smith's assertion the University waived its Eleventh Amendment immunity is groundless. Fourth, it is proper for this court to exercise jurisdiction over pendent state-law claims when considering the applicability of Eleventh Amendment immunity. Under the present circumstances, where the University is a direct party to the suit, all of these factors lead to one conclusion: the Eleventh Amendment bars Smith from proceeding under claims one and two for relief against the University. These claims are dismissed for lack of subject matter jurisdiction based on Eleventh Amendment immunity.

### B. *Plati In His Official Capacity.*

Smith brings suit against Plati in his official capacity under all three claims for relief. These claims fail because Plati, in his official capacity, is entitled to Eleventh Amendment immunity.

 As the Assistant Athletic Director for Media Relations at the University of Colorado at Boulder, Plati is a state officer and may be held personally liable for actions taken in his official capacities. *Davoll v. Webb,* 943 F.Supp. 1289, 1295 (D.Colo.1996). However, the Supreme Court recognizes a suit against a government employee in his official capacity as tantamount to a suit against the government entity itself. As stated in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "[O]fficial capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent." This sentiment was echoed in *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), where the Court ruled, "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against

the entity." This concept was most recently applied by the Tenth Circuit in *Branson School District RE–82 v. Romer,* 161 F.3d 619, 631 (10th Cir.1998), in ruling, "[W]hen a suit is brought against state officials in their official capacities, the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment."

■ Instead of automatically dismissing these claims on Eleventh Amendment grounds, however, I must first consider an important exception to the sovereign immunity doctrine stemming from the Supreme Court's ruling in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This exception suggests a state officer may be enjoined from "taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant." *Id.* at 159, 28 S.Ct. 441. Modern interpretation of this rule suggests "that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity." *ANR Pipeline Company v. D. Lafaver,* 150 F.3d 1178, 1188 (10th Cir. 1998) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring)). Smith implies his claims fall within this exception and Plati, in his official capacity, can be sued for injunctive and monetary relief.

■ However, significant limitations exist on the *Ex parte Young* doctrine: First, there must be an "ongoing violation of federal law." *Johns v. Stewart,* 57 F.3d 1544, 1552 (10th Cir.1995). Second, "[i]t applies only to prospective relief" and may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past. *Puerto Rico Aqueduct v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Finally, it "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Id.*

*Buchwald v. University of New Mexico School of Medicine,* 159 F.3d 487, 495 (10th Cir.1998). None of Smith's claims falls within these limitations. His first claim for relief asks for redress under Colorado Rules of Civil Procedure Rule 106. He clearly fails to identify an "ongoing violation of *federal law,*" and therefore, does not fall under the *Ex parte Young* doctrine. Likewise, Smith's second claim seeks relief under the Colorado Open Records Act, again failing to identify a violation of *federal law,* and not meeting the criteria for *Ex parte Young.* Finally, his third claim fails because the Eleventh Amendment bars its application against the University, regardless of relief sought.

Thus, as an "official capacity defendant," claims brought against Plati are subject to the same Eleventh Amendment considerations as those brought against the University. The *Ex parte Young* doctrine, in certain situations, brings government officials out from under the umbrella of Eleventh Amendment immunity; however, *Ex parte Young* does not collapse the umbrella in this case. Plati, in his official capacity, is entitled to Eleventh Amendment protection and all claims brought against him in this capacity are dismissed.

C. *Plati In His Individual Capacity.*

Plati, in his individual capacity, is made a defendant under Smith's first and third claims for relief. Neither of these claims withstand scrutiny.

1. *First Claim For Relief: Colo. Rules of Civ. Pro. Rule 106.*

■ Under the first claim, Smith seeks injunctive relief pursuant to Colorado Rules of Civil Procedure Rule 106. This rule pertains to "Remedial Writs and Contempt" and is appropriate under exceptional circumstances (traditionally where a Writ of Habeas Corpus, Mandamus, Prohi-

bition, etc., is deemed appropriate). Smith does not specify the subsection under which he seeks relief, but the only one having a conceivable relevance is Rule 106(a)(2):

> [R]elief may be obtained in the district court by appropriate action under the practice prescribed in the Colorado Rules of Civil Procedure .... [w]here the relief sought is to compel a lower judicial body, governmental body, corporation, board, officer or person to perform an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such lower judicial body, governmental body, corporation, board, officer, or person. The judgment shall include any damages sustained.

Applying this rule to the first claim for relief, it seems Smith is arguing (1) Plati, in his individual capacity, is obligated to recognize Smith as "media" or "press" and afford him all benefits of such status; or (2) Smith has a legally enforceable right or entitlement to be recognized as "media" or "press."

On the first assertion, it is important to emphasize this discussion addresses this claim insofar as it is asserted against Plati in his *individual capacity*. There is no law or legal precedent which would place a duty on Plati to recognize Smith as "media" or "press" just because Smith operates an Internet Website. Even if Plati did concede Smith was qualified for treatment as "media" or "press," in his individual capacity, he would have no authority to provide him any benefits of such status. His ability to provide "media" and "press" entities with special access to information regarding University of Colorado athletic programs stems directly from his position as the Assistant Athletic Director of Media Relations. Thus, only in his *official capacity* could Plati provide Smith with the relief he desires. In this sense, Smith's Rule 106 claim against Plati, in his individual capacity, fails.

Secondly, as a general rule, the Constitution does not require government officials "to make available to journalists sources of information not available to members of the public generally." *Pell v. Procunier,* 417 U.S. 817, 834, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). More fundamental, however, is the question of who is entitled to recognition as "press" in the first place. One commentator suggests the Supreme Court has denied members of the press special privileges under the First Amendment because "according the press special rights presents the insolvable problem of determining who qualifies as 'the press.' " *The Supreme Court, 1977 Term,* 92 Harv. L.Rev. 174, 179 (1978). Furthermore, "[a]ny meaningful definition of the press would involve the state in choosing among media representatives in a potentially unconstitutional manner." *Id.* This sentiment was expressed in *Branzburg v. Hayes,* 408 U.S. 665, 704, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), where the Court recognized, if special press rights were afforded, it would "be necessary to define those categories of newsmen who qualified for the privilege, a questionable procedure in light of the traditional doctrine that liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods." Accordingly, for Smith to claim he has a legally enforceable right to be recognized as "media" or "press," and afforded special treatment as such, is flatly incomprehensible.

For the forgoing reasons, I dismiss Smith's Rule 106 claim against Plati in his individual capacity.

### 2. *Third Claim For Relief: 42 U.S. § 1983.*

Smith's third claim for relief primarily seeks actual and exemplary damages against Plati in his individual capacity. Additionally, it seeks injunctive relief in

the form of "[g]ranting Plaintiff Smith temporary restraining orders and preliminary and permanent injunctions against Defendant Plati and the University forbidding future interference with his rights of free speech to [sic] and to [sic] freedom of the press, and granting such other injunctive relief as is necessary." (Second Am. Compl. ¶ 31(b).)

Insofar as the third claim seeks money damages against him in his individual capacity, Plati asserts a defense of qualified immunity against this claim. The qualified immunity doctrine derives from the necessity of permitting officials to perform their official functions free from the threat of suits for personal liability. It is rationalized upon two justifications: "(1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and judgment required by the public good." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683.

■ Recent Supreme Court and Tenth Circuit cases have codified a standard by which to implement this doctrine: "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, ─── U.S. ───, 119 S.Ct. 1692, 1696–97, ─── L.Ed.2d ─── (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 808, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). *See also Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 745 (10th Cir. Apr.6, 1999), and *Robinson v. City and County of Denver*, 39 F.Supp.2d 1257, 1265–66 (D.Colo.1999).

■ This standard is guided by three significant considerations. First, "[o]nce a defendant claims qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred." *Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir.1995) (citing *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988)). Second, plaintiff must allege a specific law or right violated by defendant's conduct. "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or the burdens of broad reaching discovery." *Harlow*, 457 U.S. at 817–818, 102 S.Ct. 2727. Finally, plaintiff must show "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Tenth Circuit has interpreted this to mean there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Robinson*, 39 F.Supp.2d at 1265–66 (citing *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992)).

■ Once a defendant raises the qualified immunity defense, a court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson*, 119 S.Ct. at 1697. Smith claims Plati violated his rights of free speech and freedom of the press under the "First and Fourteenth Amendments of the Constitution of the United States of America and Sections 10 and 25 of Article II of the Constitution of the State of Colorado." (Second Am. Compl. ¶ 16.) Further, he argues Plati performed a "constitutional wrong" by "causing a false arrest based on untrustworthy information." (Supp. Brief in Op. to Mot. to Dismiss at. p. 4.)

a. *Free Speech and Freedom of Press.*

Smith cites *Patrick v. Miller,* 953 F.2d 1240, 1247 (10th Cir.1992) to support the proposition that speech related to "any matter of political, social or other concern to the community" is protected by the First Amendment. He also cites *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) to support his argument that a public employee may openly criticize policies of public agencies and facilities without being subjected to retribution. Curiously, Smith is not a public employee and his reliance on *Pickering* is perplexing at best. Under *Patrick,* Smith has a right to speak freely about "any matter of political, social or other concern to the community," including athletic programs at the University of Colorado. Likewise, under *Pickering,* he claims a right to criticize the University of Colorado without punishment.

 Smith's argument runs into problems, however, in proving he was actually censored, or targeted for retribution, by Plati's actions. Censorship is "review of publications, movies, plays, and the like for the purpose of prohibiting the publication, distribution, or production of material deemed objectionable...." *Black's Law Dictionary* 224 (6th ed.1992). There are no allegations that Plati reviewed information Smith intended to post on his website with the purpose of prohibiting its publication. Smith continues to possess the ability to publish anything any citizen could by opening a privately operated website. Smith cites several instances where Plati undertook a course of action which made it difficult for him to gain access to information ordinarily provided to the press. However, the First Amendment does not ensure anyone, even the press, access to special information or treatment: "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg,* 408 U.S. at 684, 92 S.Ct. 2646. At all times, Smith retained, and still retains, the ability to speak freely about any political, social or other concern related to the University of Colorado athletic programs.

Likewise, retribution involves a relationship in which an employee is discharged or disciplined for expressing personal opinions which are contrary to those of the employer. Indeed, this is the situation which existed in *Pickering* where a high school teacher was discharged for publicly criticizing his school board's allocation of money throughout the district. The *Pickering* Court held it was a violation of the First Amendment to subject an employee to serious penalty or censure for publicly expressing personal opinions. *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. The *Pickering* rule has no application to the present circumstances. Smith does not, nor did he at any time relevant to this controversy, work for the University of Colorado at Boulder; therefore, he was not disciplined for his actions as the plaintiff was in *Pickering.* Plati and the University were entitled to exclude private individuals from access to information or privileges designated specifically for the press or media. *Branzburg,* 408 U.S. at 684, 92 S.Ct. 2646. In sum, Plati and the University are "doing business" when they provide access to information or special privileges to some and not to others. They are not required to "do business" with Smith. Thus Smith has not alleged the deprivation of an actual First Amendment constitutional right based on censorship and retribution.

b. *False Arrest.*

 Smith argues Plati caused him to be arrested based on untrustworthy information. (Suppl. Br. In Opp'n to Def. Plati's Mot. to Dismiss p. 4.) Further, he maintains this action worked to deprive him of First Amendment rights to freedom of speech and press by denying his ability to publish information of public concern on Netbuffs.com.

In his original answer brief, Smith cited *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252 (10th Cir.1998) and *Lusby v. T.G. & Y.*

*Stores, Inc.,* 749 F.2d 1423 (10th Cir.1984), to advance his false arrest claim. In *Baptiste,* a police officer was called to a retail store to apprehend a shoplifter. Upon arrival, the officer viewed a security video which clearly demonstrated the person accused of the crime was innocent. Yet, the police officer still arrested the person. In *Lusby,* police were again summoned to arrest a shoplifter. Upon arrival, the police asked the store security guard (an off duty policeman) what happened, then arrested the suspects without asking any witnesses for corroborating information. In both cases, information readily available to the police was disregarded and an arrest was made without probable cause. Hence, these cases demonstrate citizens have a right not to be arrested or detained under state authority without probable cause.

Plati correctly points out in his supplemental brief, probable cause is not the issue presented in this case. (Resp. Suppl. Br. Opp'n Plati's Mot. Dismiss at 9.) The issue is whether Plati denied Smith First Amendment rights by interfering with his ability to obtain and publish information on Netbuffs.com. Neither *Baptiste* nor *Lusby* speak to First Amendment rights.

In Smith's Supplemental Brief in Opposition to Plati's Motion to Dismiss, he includes an argument under *Clanton v. Cooper,* 129 F.3d 1147 (10th Cir.1997). In this case, a fire marshall knowingly and intentionally swore to untrue facts in an affidavit to obtain the plaintiff's arrest warrant. The Tenth Circuit held, "It has long been clearly established that the Fourth Amendment's warrant requirement is violated when 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' if the false statement is necessary to a finding of probable cause." *Id.* at 1154 (citing *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). The gravamen is placing false information under oath before a judicial official. By in-

voking this case, in essence, Smith claims Plati knowingly and intentionally, or with reckless disregard for the truth, told Officer Arai, a University policeman, that Smith entered non-public areas of the Athletic Media Relations Fieldhouse, took literature to which he had no authorization, and posed a physical threat to his staff. On this basis, Smith argues Plati caused him to be falsely arrested, and wrongfully restricted from the University of Colorado campus, thereby violating a clearly established constitutional right. Plati, however, neither attempted to arrest Smith nor to execute a false affidavit. Moreover, Officer Arai made his own determination based on matters in addition to Plati's complaints. At no time was Arai under the control of Plati nor was Plati performing a judicial or quasi-judicial act.

Plati's third claim is apparently one under the First Amendment for "Deprival of freedom of speech and of the press," (Second Am. Compl. ¶ 9), and seeks money damages in addition to "temporary restraining orders and preliminary and permanent injunctions forbidding future interference with his right of free speech to [sic] and to [sic] freedom of the press." (Second Am. Compl. ¶ 31(a),(b).) In his supplemental response to Plati's motion to dismiss, however, Smith asserts Plati violated a clearly established Fourth Amendment right by "causing a false arrest based on untrustworthy information." (Suppl. Br. In Opp'n to Def. Plati's Mot. to Dismiss at p. 4.) A claim under the Fourth Amendment, however, is separate and distinct from one under the First Amendment for deprival of freedom of speech and the press. Apparently Smith seeks relief under the First Amendment for a claimed violation of the Fourth Amendment. Interchanging these constitutional claims makes it difficult, if not impossible, to conclude Plati has alleged the deprivation of a constitutional right at all, let alone that right was clearly established at the time of the alleged violation. For these reasons, I find Plati is immune from claims for money damages under the third claim for relief.

■ Qualified immunity does not protect a defendant in his individual capacity from a claim for injunctive relief. In addition to seeking money damages on the third claim, Smith seeks injunctive relief against "Defendant Plati" in the form of "[g]ranting Plaintiff Smith temporary restraining orders and preliminary and permanent injunctions against Defendant Plati and the University forbidding future interference with his rights of free speech to [sic] and to [sic] freedom of the press, and granting such other injunctive relief as is necessary." (Second Am. Compl. ¶ 31(b).) I have already determined that Plati is entitled to Eleventh Amendment immunity on all claims insofar as he is sued in his official capacity. Theoretically, I could permit the third claim for relief to go forward insofar as it seeks injunctive relief from Plati in his individual capacity. However, other than in his official capacity, Smith would not be in a position to carry into effect the injunctive relief sought and, in his official capacity, Plati cannot be precluded from continuing to exclude Smith from access to information or privileges designated specifically for the press or media. Accordingly, I grant the motion of Plati to dismiss the third cause of action insofar as it seeks both money damages and injunctive relief.

## IV. *Conclusion.*

For the aforesaid reasons, I grant the motions to dismiss. Accordingly,

IT IS ORDERED THAT the University's Motion to Dismiss is GRANTED;

IT IS FURTHER ORDERED THAT Defendant David Plati's Motion to Dismiss and Motion for Stay of Litigation Pending Resolution of Qualified Immunity is GRANTED;

IT IS FURTHER ORDERED THAT this case is DISMISSED with each party to pay his or its own costs.