**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 30 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

THEODORE M. SMITH,

      Plaintiff-Appellant,

v.

DAVID PLATI, individually and in his
official capacity as Assistant Athletic
Director for Media Relations of the
University of Colorado; THE
UNIVERSITY OF COLORADO; and
THE REGENTS OF THE
UNIVERSITY OF COLORADO,

      Defendants-Appellees.

No. 99-1375

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-K-491)

---

David A. Lane, Miller, Lane, Kilmer & Griesen, Denver, Colorado (Theodore M.
Smith, pro se, on the briefs) for Plaintiff-Appellant.

Patrick T. O'Rourke (Kevin J. Kuhn with him on the brief) of Montgomery, Little
& McGrew, Englewood, Colorado, for Defendant-Appellee David Plati in his
individual capacity.

David P. Temple, Assistant University Counsel (Joanne M. McDevitt, Associate
Vice President/Senior Associate University Counsel; and Michael W. Schreiner,
Senior Assistant University Counsel, with him on the brief), Office of University
Counsel, Denver, Colorado, for Defendants-Appellees the Regents of the
University of Colorado and David Plati in his official capacity.

Before **EBEL**, **McKAY** and **LUCERO**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

Theodore Smith appeals the district court's dismissal of his claims against David Plati, the Assistant Athletic Director for Media Relations of the University of Colorado, the Regents of the University, and the University itself. In addition, Smith alleges that the district court erred when it ordered him to dismiss a parallel state court action raising virtually identical claims to those in his federal lawsuit. We AFFIRM the district court's dismissal, and, thus, hold that Smith's final allegation is moot.[1]

_____

[1]Smith's claims against the University and Plati in his official capacity raise Eleventh Amendment issues. See Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d 487, 494 n. 3 (10th Cir. 1998). These must be resolved before a court may reach the merits. See Fent v. Okla. Water Res. Bd., 235 F.3d 553, 558 (10th Cir. 2000) (quotation marks and citation omitted). As discussed infra in footnote 3, Smith has abandoned his claims against the University. The Eleventh Amendment bars Smith's attempt at recovery of all forms of relief against Plati in his official capacity except for prospective equitable relief, which is permitted under Ex parte Young, 209 U.S. 123 (1908), to remedy violations of the Constitution or federal law. See ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1188 (10th Cir. 1998). Since we hold, infra, that Smith has not alleged a violation of the Constitution or federal law, Ex parte Young does not provide Smith relief, and, moreover, we need not address Plati's claim of qualified immunity.

## BACKGROUND

A. <u>Smith's Allegations</u>

Theodore Smith launched and maintains a non-profit website named Netbuffs.com. It provides information, pictures, chat rooms, and message boards covering men's and women's athletic teams at the University of Colorado at Boulder. Smith is also a practicing Colorado attorney.

David Plati is the University's Assistant Athletic Director for Media Relations. The Athletic Media Relations Office is the liaison between the University's athletic department and members of the media.

Smith contends that "[b]eginning in approximately the month of August, 1998," Plati decided "to censor Netbuffs.com and to do everything possible to interfere with it." Smith alleges that while "Plati's motives . . . are unclear, . . . it appears he has concluded Netbuffs.com is in some way in competition with the website still operated by the University's Office of Media Relations." For purposes of this appeal, the most important examples of this alleged interference are that Plati caused Smith to be detained and ticketed for allegedly trespassing in a University hallway; that Plati "denied to Claimant Smith resources of the Office of Athletic Media Relations routinely given to other media and to other fans of the University"; and that Plati "denied Plaintiff Smith and Netbuffs.com treatment as 'media' or 'press.'" Smith also alleges that Plati prevented Smith from talking

to coaches, excluded him from football practices, required him formally to request and pay for materials given freely to the public, and kept him from distributing Netbuffs.com advertisements at a University athletic event.[2]

B. Procedural History

Smith filed this action in Boulder County District Court in February 1999, asserting both state and federal (42 U.S.C. § 1983) claims. He moved the state court for leave to depose Plati before entry of a case management order. The state court granted the motion and the order was to be entered March 12, 1999. Appellees, however, removed the case to federal district court on March 11, 1999, pursuant to 28 U.S.C. § 1441. Plati also filed a motion for a stay of litigation to prevent discovery on any issues other than those relating to Plati's claim of qualified immunity. On April 20, 1999, the federal district court limited Smith's discovery accordingly. Two days later, on April 22, 1999, Smith commenced a

---

[2]In general, when reviewing a motion to dismiss, a court examines only the allegations made in the complaint. See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). Unfortunately, in his Opening Brief, Smith overstates what allegations were properly before the district court on the motion to dismiss, both by including items in his Brief that he did not include in his complaint and by exaggerating allegations that were included in the complaint. For example, while in the Opening Brief Smith alleges that Plati falsely told a reporter Smith was guilty of larceny, resulting in an article harming Smith's reputation (see Opening Brief at 13), the complaint does not contain this allegation. In keeping with our obligations under Rule 12(b)(6), the recitation of Smith's allegations in the text of the opinion was drawn exclusively from the complaint.

"virtually identical state court action in the Boulder District Court (No. 99-CV-0677), omitting any federal claims so that the new action could not be removed."

Upon discovering the parallel state action, the federal district court ordered Smith to dismiss it. Smith complied, but contends on appeal that the district court's order was erroneous.

In March 1999, the University and Plati filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim). See Smith v. Plati, 56 F. Supp. 2d 1195, 1199 (D. Colo. 1999). Smith deposed Plati on the issue of qualified immunity on May 13, 1999. See id. The court heard oral argument regarding the motion to dismiss, and granted the motion. See id.

C. Issues on Appeal

As interpreted by the district court, Smith's second amended complaint makes five claims. First, Smith alleges that Plati and the University violated the Colorado Open Records Act, see Colo. Rev. Stat. § 24-72-204, by not producing and permitting Smith to inspect various University documents. Smith failed to raise this issue on appeal and thus we deem it waived. See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (stating that failure to raise

an issue on appeal in the opening brief waives the issue).[3]  Smith's second, third, and fourth claims allege that Plati violated 42 U.S.C. § 1983 by causing Smith to be falsely arrested, retaliating against him for exercising his First Amendment rights, and denying him his First Amendment right to "gather news" from the University.  Smith's fifth claim seeks an order of mandamus under Colorado Rule of Civil Procedure 106(a)(2)[4] requiring Plati and the University to treat him in the same way that they treat other members of the press.  Smith alleges that the First Amendment guarantees him this right of equal access.[5]

Finally, on appeal Smith asserts that the district court erred when it ordered him to dismiss the parallel state action.

---

[3]At oral argument, Smith's counsel conceded that, on appeal, Smith had abandoned his claims against the University.  Thus, we consider only the remaining claims against Plati in his official and individual capacities.

[4]The district court noted, and we agree, that "Smith does not specify the subsection [of Rule 106] under which he seeks relief, but the only one having a conceivable relevance is Rule 106(a)(2)." Smith, 56 F. Supp. 2d at 1203 (quoting the language of Rule 106(a)(2)).

[5]In his complaint, Smith styles Plati's actions as violating "the Constitutions of the United States of America and State of Colorado." (Complaint ¶ 21.)  To the district court and on appeal, however, Smith rested this claim exclusively on the Speech and Press Clauses of the First Amendment to the federal Constitution.  Therefore, we characterize it as such. See Phillips v. Calhoun, 956 F.2d 949, 953-54 (10th Cir. 1992) (observing that "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point") (quoting Pelfresne v. Vill. of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990)).

**JURISDICTION AND STANDARDS OF REVIEW**

A. Jurisdiction

Smith filed this action in state court asserting one federal (42 U.S.C. § 1983) and two state claims. Appellees removed it to federal court pursuant to 28 U.S.C. § 1441. The district court had federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

B. Standard of Review

We review de novo a district court's dismissal under Rule 12(b)(1) and 12(b)(6). See U.S. West, Inc. v. Tristani, 182 F.3d 1202, 1206 (10th Cir. 1999) (Rule 12(b)(1)); Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (Rule 12(b)(6)). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). "We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

Smith is a lawyer proceeding pro se. While we are generally obliged to construe pro se pleadings liberally, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), we decline to do so here because Smith is a licensed attorney, see

Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) ("Mr. Olivares proceeds pro se in his appeal. We cannot accord him the advantage of the liberal construction of his complaint normally given pro se litigants because he is a licensed attorney.") (citation omitted).[6]

## DISCUSSION

A. False Arrest Claim

To state a claim under 42 U.S.C. § 1983 for false arrest, Smith must allege two elements:

> First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). In circumstances similar to this case, this court has noted that the first element of § 1983 may require a

---

[6]Even when a complaint is construed liberally, this court has dismissed pro se complaints for failure to allege sufficient facts. Hall v. Bellmon, 935 F.2d 1106, 1110, 1114 (10th Cir. 1991). Cf. Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded to pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.").

greater showing to establish a substantive due process claim for false arrest than what would be required to allege a state law claim of false arrest:

> The cases recognize that evaluations of rights and duties under § 1983 . . . arising as they do under the Fourteenth Amendment to the Constitution of the United States, are often different from counterpart common law actions which arise under state substantive law.  This is not to say that at times the same set of facts will not give rise to remedies under both § 1983 and the state law of torts.  The differences are . . . in terms of not only the requisite elements under § 1983, but also in the gravity of the right which has been invaded.  For example, under state common law . . . the slightest interference with personal liberty is a false imprisonment.  It does not follow that all such invasions however trivial or frivolous serve to activate remedies under the due process clause of the Fourteenth Amendment . . . .

Wells v. Ward, 470 F.2d 1185, 1187 (10th Cir. 1972).  In Wells,

> [w]e refused to find a cause of action under § 1983 . . . where a student being ticketed for a traffic violation attempted to drive his car away and refused to sign a ticket.  He was taken into custody, handcuffed, transported ten miles to a Justice of the Peace, not allowed to make bond on an American Automobile Association bond card, and kept in a cell for a period in excess of one hour.  The [Wells] court stated that "in the final analysis this incident falls short, not only because the officers acted in accordance with local law requiring that a violator be arrested when he fails to sign the ticket, but also because the case is insubstantial."

Lessman v. McCormick, 591 F.2d 605, 610 (10th Cir. 1979) (citing Wells, 470 F.2d at 1189).

Similarly, in Lessman, plaintiff alleged that the mayor of Topeka, a bank, the police chief, and a police officer conspired to arrest her on a warrant alleging that she had failed to pay a parking ticket. See id. at 607.  Plaintiff asserted that

she was arrested, taken to the police station, and imprisoned until she paid the parking ticket. See id. Even after she paid the ticket, she stated that she was held until a bank employee appeared and told her the bank had prevailed upon the city to arrest and imprison her because she had failed to respond to the bank's letters regarding her indebtedness. See id.

The Lessman court noted, "No specific facts were alleged with respect to any defendants other than White [the police officer] and Reynolds [the bank employee], except that they 'arranged to have the defendant, White, arrest plaintiff,' and that they conspired to deprive plaintiff of her rights." Id. The district court dismissed the § 1983 claim for failure to state a cause of action. This court reversed, saying the issue was "close to the line of being an insubstantial deprivation of liberty, but without the development of facts we cannot say that it is, at least as to White and Reynolds." Id. at 611.

This case, in contrast, is not "close to the line." In his complaint, Smith mentions false arrest only twice, in paragraphs twelve ("[W]ithout legal or factual justification of any kind, Defendant Plati caused Plaintiff Smith to be arrested for 'trespassing' in a public place in the University's Office of Media Relations.") and seventeen ("Those damages specifically include . . . those attributable to his own work, incurred by Plaintiff Smith in response to the arrest and order of exclusion caused by Plati."). These two references are not sufficient to sustain

the requirements for an unconstitutional detention under § 1983. They are far sparser and more conclusory than those made in <u>Lessman</u>, where this court said the allegations were "close," yet ultimately sufficient to withstand dismissal. For example, Smith did not allege that he had been detained for a substantial period of time, handcuffed or otherwise restrained, physically assaulted by an officer, or confined in a jail or other room.[7] Even granting Smith's assertion, as we must on appeal from a motion to dismiss, that he was "arrested," we believe Smith has not alleged enough facts to state a § 1983 claim for deprivation of liberty in violation of the Fourteenth Amendment.[8]

Furthermore, and in contrast to <u>Lessman</u>, we have affirmed a district court's dismissal under 12(b)(6) for failure to state a § 1983 claim for retaliation against a plaintiff's freedom of speech in a case where the factual allegations were as sparse as Smith's. <u>See</u> <u>Eames v. City of Logan</u>, 762 F.2d 83, 86 (10th Cir. 1985). The district court in <u>Eames</u> advised the plaintiff that his First Amendment allegation was conclusory and required expansion to set forth a claim. <u>See</u> <u>id.</u> at

---

[7]At oral argument, Smith's counsel admitted that Smith had been only stopped and given citations by a University officer.

[8]Smith's declaration that he was issued a citation that banned him from the University's Boulder campus for one year does not support his § 1983 unlawful detention claim. We have found no cases, and Smith did not cite any to us, in which a court found that exclusion from an area supported a claim of unlawful detention.

Plaintiff was given leave to amend his complaint, but he took no action, so the court dismissed the complaint without prejudice. See id.

While in this case, the district court did not specifically advise Smith that his false arrest claim was conclusory, we do not read Eames as imposing an advisement requirement, particularly where Smith has already filed two amended complaints. Rather, like Lessman, it stands for the proposition that plaintiffs must allege sufficient facts to support their § 1983 claims. Bare conclusions, even read in the light most favorable to plaintiff, may prove insufficient. "The existence of the § 1983 remedy does not require that federal courts entertain all suits in which unconstitutional deprivations are asserted. A federal constitutional question must exist 'not in mere form, but in substance, and not in mere assertion, but in essence and effect.'" Wells, 470 F.2d at 1189 (quoting Cuyahoga River Power Co. v. N. Ohio Traction & Light Co., 252 U.S. 388, 397 (1920)).

The district court dismissed Smith's false arrest claim partially on the ground that the University officer made an independent evaluation before stopping and citing Smith. See Smith, 56 F. Supp. 2d at 1206. To determine that the officer's evaluation was indeed "independent," the court must have relied on the officer's written report, for nothing in Smith's complaint gives that impression. We decline to follow this approach because the police report constitutes evidence outside of the complaint, and on a motion to dismiss a court

- 12 -

must restrict its inquiry to "the plaintiff's complaint alone." Sutton, 173 F.3d at 1236.

We nevertheless affirm the district court's dismissal of Smith's § 1983 "false arrest" claim on the ground that he failed to allege sufficient facts to support the pleading requirements for an unconstitutional detention. Cf. Sandoval, 29 F.3d at 542 n.6 ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.").

B. Retaliation

"Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000). Recently, we adopted the following test to assess a claim of retaliation for exercising one's freedom of speech "against a defendant who is neither an employer nor a party to a contract with the plaintiff," as is the case here. See id. at 1213. Such a plaintiff must prove: (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of

constitutionally protected conduct. See id. at 1212. This approach has been followed by other circuits. See, e.g, Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999); Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998).

Smith's claim satisfies the first element, for publishing Netbuffs.com is undoubtedly an activity protected by the First Amendment. For purposes of this appeal we will assume without deciding that his claim satisfies the third element, as well. Nevertheless, it founders on the second element. Plati's actions did not cause Smith to suffer an injury that would chill a person of ordinary firmness from continuing to publish an internet site. Plati's actions may have made it more difficult to obtain some information regarding the University's varsity athletic programs, but alternative avenues to information remained open. In addition, Plati did nothing to affect an ordinary person's ability to actually maintain a website. Plati neither prevented such private websites nor did he have the power to do so.[9]

---

[9]Smith makes much out of Plati's "attempts" and "threats" but alleges little concrete, retaliatory action. For instance, Smith alleges that Plati attempted to induce Smith's attorney not to represent him and attempted to interfere with Netbuffs.com by threatening to copyright athletic information. Smith, however, fails to allege enough context to show why these preliminary (and apparently unsuccessful) actions would chill a person of ordinary firmness. For example, perhaps Plati had a legal right to copyright the varsity sports schedules; Smith never alleges he did not. In the same vein, while Smith alleges that Plati had him
(continued...)

The district court in this case recognized this when it wrote, "Smith continues to possess the ability to publish anything any citizen could by opening a privately operated website. . . . At all times, Smith retained, and still retains, the ability to speak freely about any political, social or other concern related to the University of Colorado athletic programs." Smith, 56 F. Supp. 2d at 1205. The focus, of course, is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled. As the Ninth Circuit explained,

> Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, we conclude that the proper inquiry asks "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."

Mendocino Envtl. Ctr., 192 F.3d at 1300 (quoting Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996), vacated on other grounds, 520 U.S. 1273 (1997) (internal quotation marks and citation omitted in Mendocino)). Nevertheless,

---

[9](...continued)
excluded from football practices, he does not allege that he had a right to attend football practices. While it is true that when reviewing a motion to dismiss we must accept a plaintiff's allegations as true and view them in the light most favorable to the plaintiff, see Sutton, 173 F.3d at 1236, we need not – and, indeed, should not – manufacture allegations that are not there. As noted above, Smith is a practicing attorney and we decline to construe his pleading liberally.

- 15 -

Smith's persistence in maintaining his website offers some evidence that Plati's actions did not prevent such private speech.

In any event, we conclude the district court was correct to dismiss this claim and we affirm.

C. First Amendment Right of "Newsgathering"

Smith alleges that there is "some sort of right to newsgathering" protected by the First Amendment, which Plati and the University violated by declining to provide him certain information about its varsity athletic programs. See Opening Brief at 38. We disagree.

It is well-settled that there is no general First Amendment right of access to all sources of information within governmental control. See Houchins v. KQED, Inc., 438 U.S. 1, 9 (1978); see also id. at 15 ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."); Lanphere & Urbaniak v. Colorado, 21 F.3d 1508, 1511 (10th Cir. 1994) ("[T]here is no constitutional right, and specifically no First Amendment right, of access to government records."). This applies equally to both public and press, for the press, generally speaking, do not have a special right of access to government information not available to the public. See Houchins, 438 U.S. at 11; Pell v. Procunier, 417 U.S. 817, 834 (1974); Saxbe v. Wash. Post Co., 417 U.S. 843, 850

- 16 -

(1974); Branzburg v. Hayes, 408 U.S. 665, 684-85 (1972); Zemel v. Rusk, 381

U.S. 1, 17 (1965).[10]

Smith does not point to any Supreme Court or Tenth Circuit precedent

establishing the right of access he seeks.  Smith's citation to Branzburg is not to

the contrary.  In Branzburg, the Supreme Court remarked that "without some

protection for seeking out the news, freedom of the press could be eviscerated,"

408 U.S. at 681, and "news gathering is not without its First Amendment

protections," id. at 707.  These statements are prefatory dicta and do not create a

right of access.  In fact, in Houchins the Supreme Court expressly rejected

Smith's suggestion: "[The Court's observation in] Branzburg v. Hayes . . . that

'news gathering is not without its First Amendment protections,' in no sense

implied a constitutional right of access to news sources." 438 U.S. at 10 (citation

omitted).

---

[10]The Supreme Court has recognized that the First Amendment guarantees access to government records pertaining to criminal proceedings if (1) there has been a tradition of access to the information and (2) public access benefits the functioning of the particular process in question. See, e.g., Press-Enter. Co. v. Superior Court (Press Enterprise II), 478 U.S. 1, 8 (1986) (finding a conditional right of access to California pre-trial criminal proceedings). Cf. Journal Pub. Co. v. Mechem, 801 F.2d 1233, 1236-37 (10th Cir. 1986) (applying a similar analysis to coverage of certain aspects of a civil trial).  Because Smith's claims do not involve a claim of denied coverage of a criminal trial in particular, or any trial proceeding in general, we do not find those cases particularly relevant.

Therefore, we conclude that Smith has not demonstrated that his alleged right of access to University athletic information exists, as a member of either the public or the press. Thus, the district court's dismissal of this claim was proper.

D. Claim for Mandamus for Violation of First Amendment Right of Equal Access

Smith seeks an order of mandamus under Colorado Rule of Civil Procedure 106(a)(2) requiring Plati to give Smith equal access to all information given to other members of the press. (See Complaint ¶¶ 19-22.) Smith grounds his claim for mandamus relief on the assertion that there is "some sort of protection against arbitrary and even malicious giving of access to some but denial to others."

In considering whether to issue a writ of mandamus, Colorado courts have generally applied a three-part test: (1) a plaintiff must have a clear right to the relief sought; (2) the defendant must have a clear duty to perform the act requested; and (3) there must be no other available remedy. See Sherman v. City of Colorado Springs Planning Comm'n, 763 P.2d 292, 295 (Colo. 1988). Mandamus will lie to compel a ministerial act, but it is an inappropriate remedy when the agency or officer has discretion. See Ahern v. Baker, 366 P.2d 366, 369 (Colo. 1961); Menchetti v. Wilson, 597 P.2d 1054, 1056 (Colo. Ct. App. 1979) ("C.R.C.P. 106 relief in the nature of mandamus will be granted only in cases where a clear legal duty exists for an administrative officer to perform a ministerial act."). "[M]andamus will not lie to enforce duties generally, or to

control and regulate a general course of official conduct for a long series of continuous acts to be performed under varying conditions." Ahern, 366 P.2d at 369. For example, the Colorado Supreme Court has held that mandamus under Rule 106 is appropriate to compel an ousted government officer to turn over the books and papers of the office to the newly appointed office-holder. See Kepley v. People ex rel. Everson, 230 P. 804, 805-06 (Colo. 1924). In contrast, the Colorado high court explained that "mandamus will not ordinarily be granted to compel police officers to enforce the police or criminal laws generally, such as laws regulating intoxicating liquors." Ahern, 366 P.2d at 369 (citation and alterations omitted).

It is clear that under Colorado law mandamus does not lie to compel Plati to treat Smith like all other members of the media. Plati's job requires him to make on-going decisions regarding what University athletic information is made public, given to the press, or kept confidential – and every variety of decision in between – under constantly changing circumstances. Smith asks this court to control and regulate the general course of Plati's official conduct as Assistant Athletic Director for Media Relations for a long series of continuous acts performed under varying conditions. Mandamus is not appropriate in this case because it would require a court constantly to be looking over Plati's shoulder and assessing whether, for instance, after consulting with the football coach and the

athletic director, Plati's decision to permit five media photographers to set up their cameras on the sidelines during a home football game meant Plati had to grant sidelines access to Smith as well.

Therefore, while on a different ground than the district court, we affirm the dismissal of this claim. Cf. Sandoval, 29 F.3d at 542 n.6.

E. Anti-Injunction Act

Smith objects that the district court erred when it ordered him to dismiss the state court action which asserted virtually identical claims. Given that we affirm the dismissal of Smith's substantive claims, we hold that the issue is moot. An issue becomes moot when it becomes impossible for the court to grant "any effectual relief whatsoever" on that issue to a prevailing party. See Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (citing Mills v. Green, 159 U.S. 651, 653 (1895)).

Smith had an opportunity to fully and fairly litigate the state law claims in federal district court and to raise those issues on appeal. Those claims are now disposed of and any subsequent litigation would be barred by res judicata. See Cromwell v. County of Sac, 94 U.S. 351, 352-53 (1876) (holding that under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in the prior action); see also Kremer v. Chem. Constr. Corp., 456

U.S. 461, 466-67, 485 (1982) (holding that once decided in a court of competent jurisdiction, the merits of a legal claim are not subject to redetermination in another forum); Stokke v. S. Pac., 169 F.2d 42, 43 (10th Cir. 1948) (same).[11]

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's dismissal of Smith's claims. We also DISMISS as moot Smith's allegation that the district court erred when it ordered Smith to dismiss his parallel state court action.

---

[11]Indeed, Smith concedes that this issue has now become moot: "Plaintiff Smith should have been allowed to continue with his state court action, and he should now be allowed to continue the action the court below told him he could bring in the state courts even when, if Smith prevails in any way on this appeal, the court below once again regains jurisdiction of this case upon remand." (Opening Brief at 63 (emphasis added).) Since we have affirmed the district court's dismissal on all claims, Smith has not "prevail[ed] in any way on this appeal."