Michael J. COLLOPY, Plaintiff–
Appellant,

v.

CITY OF HOBBS, A New Mexico Mu-
nicipal Corporation, and Tony Knott,
in his individual and official capaci-
ties, Defendants–Appellees.

Nos. 01–2000, CIV–00–807–PJK/LFG.

United States Court of Appeals,
Tenth Circuit.

Dec. 26, 2001.

Before BRISCOE and MURPHY, Circuit Judges, and OBERDORFER, District Judge.*

ORDER AND JUDGMENT **

OBERDORFER, District Judge.

Michael Collopy appeals the district court's dismissal of his 42 U.S.C. § 1983

complaint against the City of Hobbs and its Chief of Police, Tony Knott. That complaint alleged that the defendants retaliated against him for a statement he made in exercise of his First Amendment right to speak about possible civil rights violations by the Hobbs police, a matter of public importance. Collopy, a part-time special master in juvenile cases, claims that Knott encouraged prosecutors to appeal one of his rulings and provided them with allegedly misleading police records reflecting unfavorably on Collopy and his children to support the appeal and thereafter to assist in the prosecutors' defense of themselves during ensuing disciplinary proceedings. Allegedly intimidated, Collopy resigned his position as special master, to his detriment. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand for further proceedings.

I.

Collopy's complaint alleges the following. Collopy was a special master in juvenile cases for sixteen years. Complt. ¶ 5. In June 1997, he presided over an evidentiary hearing regarding the merits of criminal charges filed against an African American teenager, Michael Hodge, that arose out of a violent incident at a high school football game. Complt. ¶¶ 7, 8. Controversial police conduct during that incident attracted charges of civil rights violations, including a Department of Justice investigation. Complt. ¶ 11. Collopy recommended dismissal of the charges against Hodge, and in the course of which he commented that Hodge's civil rights "may

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of the District of Columbia, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

The court generally disfavors the citations of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

well have been violated ... [but] that is not for this court to determine." Complt. ¶ 16.

After learning of Collopy's comment, Knott became "concerned, angry and upset." Complt. ¶ 18. Knott then complained to the Office of the District Attorney that the police officers involved in the Hodge case "did not get a fair shake" at the hearing. Complt. ¶ 19. Knott "urged, encouraged and instigated" two assistant district attorneys "to find a way to obtain a new hearing or other judicial relief that would set aside the plaintiff's findings in the Hodge case, despite that no legal grounds for such relief existed." Complt. ¶ 20.

The assistant district attorney who prosecuted Hodge's case initially informed Hodge's attorney that the prosecution did not intend to appeal Collopy's ruling. After the complaint from Chief Knott, however, the prosecutor filed an "exception" to the ruling together with "police blotter" records relating to one of Collopy's juvenile children, gratuitously provided to the prosecutors by Knott, "for use in supporting" the exception. Complt. ¶¶ 21, 22, 27, 28.[1] Such police blotters list the names of anyone involved in an incident recorded by the Hobbs Police Department, whether as a suspect, victim, witness, or otherwise. Complt. ¶ 25. The exception "focused on the contacts between the Hobbs Police Department and one of [Collopy's] children" listed on these police blotters records, which the prosecutors attached to the exception. Complt. ¶ 24. It allegedly "presented no legal issues for review" but rather was "an improper attack on the impartiality of [Collopy] and an attempt to discredit him by misquoting, or taking out of context, his remarks about a possible civil rights violation." Complt. ¶ 23.

The state court that received the exception dismissed it, affirmed Collopy's ruling in the Hodge case, and referred the prosecutors to the state supreme court's disciplinary apparatus. Complt. ¶¶ 30, 31. After Knott learned that Collopy was planning to testify against the prosecutors at a hearing in the disciplinary proceedings, he furnished to them additional police blotter records relating to Collopy's children and to Collopy himself "[i]n a further effort to discredit" Collopy. Complt. ¶¶ 32, 33. The "vast majority" of those listings identified Collopy and his children as victims or witnesses of crimes. Complt. ¶ 34. Knott, however, "proceeded as though these numerous contacts were negative and that [Collopy] was prejudiced against the Hobbs Police Department ... and that it was this suspected bias that had led to [Collopy's] decision to acquit ... Hodge and to [Collopy's] statement at the hearing regarding the possible violation of Hodge's civil rights." Complt. ¶ 35.

Collopy's complaint asserted numerous motives underlying Knott's conduct, alleging that: Knott furnished the police blotter records "in an improper attempt to harass, intimidate and retaliate against [Collopy] for his having engaged in protected first amendment conduct," Complt.

---

1. An exception is a legislatively prescribed means of challenging a special master's recommendation before its review by a children's court judge. See N.M. Stat. Ann. § 10–111. Rule 10–111 of the New Mexico Children's Court Rules provides, "All recommendations of the special master are contingent upon the approval of the children's court judge." N.M. Stat. Ann. § 10–111(C). Prior to such approval, "[a]ny party may file exceptions to the special master's proposed findings, conclusions, recommendations or proposed orders." Id. § 10–111(E).

¶ 36; Knott's actions "were undertaken with the intent to create a chilling effect upon [Collopy] and to compromise or inhibit his ability to engage in decision-making free of undue influence," Complt. ¶ 38; Knott's actions were "undertaken in retaliation for his content-based disapproval of [Collopy's] decision and ruling in the Hodge case, which ruling involved a matter of public concern, and/or in retaliation for [Collopy's] statement that ... Hodge's civil rights may have been violated," Complt. ¶ 39; Knott's "actions were ... undertaken with the intent to place [Collopy] in a false light and to make it appear that he was not acting as an impartial decision-maker but instead was corrupt," Complt. ¶ 41; Knott disclosed the police blotter records "because [Collopy's] ruling in the Hodge case favored a Black citizen, who was the son and nephew of Black community activists openly opposing racial discrimination by the defendants, and came at a time when the Hobbs Police Department was under investigation based on allegations of racial discrimination arising from the very incident that also resulted in the criminal prosecution of Michael Hodge," Complt. ¶ 42; and that "as a direct result" of Knott's actions, Collopy was "sufficiently chilled in his willingness and ability to serve as a Special Master, that he resigned that position," resulting in loss of income in addition to emotional distress, humiliation, and embarrassment. Complt. ¶¶ 45, 47.

The district court dismissed Collopy's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), ruling in essence that the prosecutors, not Knott, filed the offending police blotter records and that,

even if Knott's action was *a* proximate cause of the filing of these available, albeit offending, documents, this could not have chilled Collopy from continuing as a special master. Under the district court's conception of the case, Knott merely provided publicly available records to the prosecutors to facilitate a permissible—albeit ultimately unsuccessful—legal challenge to Collopy's ruling in the Hodge case, a set of facts that, in the district court's view, did not entitle Collopy to any relief. This appeal followed.[2]

## II.

### A.

■ We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6). *See Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126 (10th Cir.1998). "In reviewing a decision on a motion to dismiss, we accept the factual allegations in the complaint as true and we resolve all reasonable inferences in the plaintiff's favor." *Id.* at 1126–27. "Dismissal under Rule 12(b)(6) is a 'harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Id.* at 1127 (quoting *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir.1989)). "Dismissal for failure to state a claim is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

---

2. Collopy's complaint also asserted claims of interference with his right to familial association, his right to privacy, and his right to make and enforce contracts. The district court dismissed these claims when it dismissed the complaint, and Collopy does not appeal them. Thus, the only claim present here is Collopy's retaliation claim.

## B.

■ This Court has repeatedly stated, " 'Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom.' " *Smith v. Plati,* 258 F.3d 1167, 1176 (10th Cir.2001) (quoting *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir.2000)). Where, as here, a plaintiff alleges retaliation against a defendant " 'who is neither an employer nor a party to a contract with the plaintiff,' " *id.* (quoting *Worrell,* 219 F.3d at 1213), he must prove the following elements: " '(1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.' " *Id.* (quoting *Worrell,* 219 F.3d at 1212).

## 1.

■ Knott does not seriously dispute that the complaint satisfied the first of these elements: Commenting in one's capacity as a special master on the possibility of civil rights violations is speech on a subject of public importance that is protected by the First Amendment. *Cf. Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."); *Lytle v. City of Haysville,* 138 F.3d 857, 863 (10th Cir.1998) ("Matters of public concern are those of interest to the community, whether for social, political, or other reasons.") (citing *Connick v. Myers,*

461 U.S. 138, 145–49, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). We therefore focus our discussion on the remaining two elements.

## 2.

■ With regard to the second element of a retaliation claim, "[t]he focus, of course, is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled." *Smith v. Plati,* 258 F.3d at 1177. Ordinarily, public officials who voluntarily inject themselves into the public arena may, as the district court observed, be expected to have " 'thicker skin' " and thus not be chilled by criticism of comments they make in their official capacity. Order at 9 (quoting *Mattox v. City of Forest Park,* 183 F.3d 515, 522 (6th Cir.1999)). Even assuming that this logic applies equally to a court-appointed, part-time, presumably untenured special master like Collopy, however, this case presents unique factors that make dismissal inappropriate.

The most compelling circumstance is that, according to the complaint, Knott deliberately disparaged Collopy's children by portraying them as criminals. The complaint asserted that Knott initially provided the prosecutors with police blotter records that "related to [Collopy's] child when he was a juvenile." Complt. ¶ 27. After learning that Collopy was going to testify before a disciplinary board regarding charges of misconduct invited by the prosecutors' use of these materials, Knott "funneled additional police records, this time relating to [Collopy] as well as to his children," to the prosecutors "in a further effort to discredit" him. Complt. ¶ 33. These records listed numerous contacts between Collopy, his children, and the po-

lice over a fourteen-year period. Complt. ¶ 26. Knott "proceeded as though these numerous contacts were negative," despite the fact that the "vast majority of the police records ... identified [Collopy] and his children as either victims of or witnesses to alleged crimes." Complt. ¶¶ 34, 35.

In effect, according to these allegations, Knott erroneously portrayed both Collopy and his juvenile children as criminals in order to support a charge of bias against Collopy; this portrayal constituted the entire evidentiary basis for the sole challenge contained in the exception. A trier of fact may well find that supporting an official challenge to the impartiality of a part-time, presumably untenured, decisionmaker by portraying his children in this manner is not one of the many hazards that a judicial officer should be expected to face. We conclude that Collopy could persuade a reasonable trier of fact that the alleged attack on a reasonable person in his position and his children, such as that which Knott allegedly facilitated, would "chill" that person to the point of resignation. The district court erred in concluding otherwise as a matter of law.

### 3.

▮ The district court did not address the third element of Collopy's retaliation claim because it dismissed his complaint on the basis of the second element. Having considered the arguments of the parties, we conclude that Collopy's complaint satisfies this element as well.

▮ As noted, a plaintiff alleging retaliation must show that " 'the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.' " *Smith*

*v. Plati*, 258 F.3d at 1176 (quoting *Worrell*, 219 F.3d at 1212). This requires that the plaintiff ultimately prove "that 'but for' the retaliatory motive," the adverse action "would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990) (citations omitted). Regarding the proof of this element, this Court has stated, "Precisely because the ultimate fact of retaliation turns on defendants' state of mind, it is particularly difficult to establish by direct evidence." *Id.* at 949. Therefore, a plaintiff may present circumstantial evidence of a retaliatory intent in order to establish a retaliation claim, typically raising an issue of fact, not law. *See id.*

Collopy has alleged facts which, if proven, could persuade a reasonable trier of fact that Knott's encouragement of the filing of the exception and his disclosure of the police blotter records were intended, at least in part, to retaliate against Collopy for his statement concerning possible civil rights violations by the Hobbs police. For example, the complaint averred that Knott became "concerned, angry and upset" as a result of this comment because he feared it "would be utilized by the minority community," including Hodge's mother, Verna Hodge, and uncle, Carl Mackey, "who had complained previously of defendants' conduct." Complt. ¶ 18; *see also* Complt. ¶ 9 (stating that Hodge's mother and Mackey "were, and had been for more than a year, outspoken community leaders and activists in the Black and Hispanic community in Hobbs protesting the conduct of the Hobbs Police Department"). According to the complaint, Knott then complained to the prosecutors in the Hodge case "that the Hobbs police officers involved in the Hodge case 'did not get a fair shake' at the hearing." Complt. ¶ 19. The prosecutors subsequently filed the exception, although they had not planned to do so before receiving Knott's complaint. Complt. ¶ 22.

These allegations, if proven, could persuade a trier of fact that, but for Knott's anger upon learning of Collopy's comment during the Hodge hearing and his urging of the prosecutors to file an exception to the ruling to which the comment related, the exception would not have been filed and the disparagement of Collopy's children would not have occurred. The allegation that Knott portrayed Collopy's children as criminals to persuade the prosecutors to appeal the Hodge ruling, if proved, could be perceived by a trier of fact as further circumstantial evidence that Knott's motivation was not merely concern about the propriety of a legal ruling but also, if not entirely, deliberate retaliation. This view could be reinforced by proof of the allegation that Knott provided additional misleading police blotter records relating to the children when he learned that Collopy planned to testify against the prosecutors in the proceedings to discipline them. This second set of disclosures was only tangentially related to the Hodge case, and Knott's conduct in this regard could be perceived as confirming that his interest in that case extended beyond a desire to reach the right result and reflected a more invidious motive.

### 4.

■ This analysis is not affected by whether the police blotter records are public or private. The district court ruled in connection with its dismissal of Collopy's privacy claim-which Collopy does not appeal-that police blotter records are public, a legal conclusion that strongly influenced the court's dismissal of Collopy's retaliation claim. *See* Order at 12 (citing N.M. Stat. Ann. § 29–10–7(A)(2)). Collopy does not specifically appeal this ruling in his appellate briefs, although at oral argument he asserted that the police blotter records

were protected under state law, a position with which the defendants disagree. Even if these records were public, however, this Court has held that "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir.1990) (internal quotation marks and citations omitted). While the inference that Knott's conduct was prompted by retaliatory intent might be even stronger if the records were protected from disclosure by law, proof of his allegedly malicious intent would not be trumped or even diluted by proof that the police blotter records are public.

### 5.

■ That Knott did not himself file the exception does not, under the circumstances as alleged in the complaint, insulate him from responsibility for any unconstitutional chilling effect that followed. Knott asserts that it was the prosecutors' decision whether to act on any suggestions he made, and their decision to employ the police blotter records in support of the exception and in their personal defenses during the disciplinary proceedings exonerates him. In other words, under Knott's view, he was nothing more than a "facilitator" of the actions that produced the chilling effect claimed by Collopy, and he thus cannot be held liable for them.

■ Knott's characterization of his role, even if proved, would not exculpate him as a matter of law. While remote actors may escape section 1983 liability under some circumstances, they cannot do so when they deliberately furnish and mischaracterize materials that influence a decision which produces a chilling effect on

constitutionally protected activity. *See DeLoach v. Bevers*, 922 F.2d 618 (10th Cir.1990). In *DeLoach*, the plaintiff sued a police officer who had provided an affidavit that led to the plaintiff's arrest and prosecution on first-degree murder charges. The plaintiff's section 1983 complaint claimed that the officer had provided a deliberately misleading affidavit in retaliation for the plaintiff's exercise of her right to retain counsel after being identified as a suspect in the case, a claim that this Court observed "implicate[d] not only the Sixth Amendment but also clearly established First Amendment rights of association and free speech." *Id.* at 620. The defendant police officer argued that she could not be held responsible for what happened after she supplied the affidavit because there were "many intervening actors making independent determinations to arrest and prosecute." *Id.* at 620–21. This Court rejected the defendant's argument, concluding that the police officer could not "hide behind the decisions of others involved in [the plaintiff's] arrest and prosecution if she deliberately conceals and mischaracterizes exculpatory evidence." *Id.* at 621. In so holding, this Court quoted with approval from a Seventh Circuit decision, which stated:

> "[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.
>
> ... If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute.... They cannot hide behind the officials whom they have defrauded."

*Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988)) (alterations in original). Because the *DeLoach* Court determined that "there was evidence from which the jury could believe that [the defendant] manipulated the process by mischaracterizing the evidence and by concealing the exculpatory opinion of a key medical expert," it affirmed a grant of summary judgment to the plaintiff. *Id.* at 621.

The reasoning of *DeLoach* applies here. Under *DeLoach*, Knott cannot be immunized from section 1983 liability if he provided deliberately misleading information that influenced the immediate actor who directly caused the chilling effect alleged by Collopy. This is exactly the scenario alleged in Collopy's complaint. Accepting Collopy's allegations as true—as we must at this stage—Knott urged the prosecutors to challenge Collopy's ruling, told them that Collopy was biased against the police, and corroborated this accusation by furnishing to them police blotter records containing references to Collopy and his children. Knott proceeded as though these police blotter references were "negative" when in fact the "vast majority" of those references involved the children as the victims or witnesses, rather than the perpetrators, of crimes. According to the complaint, the prosecutors would not have filed an exception were it not for Knott's encouragement and provision of supporting materials.

These allegations permit an inference that Knott was more than merely an invisible hand who recommended a preferred course of action to the prosecutors and assisted in a legitimate, though unsuccessful, effort to seek legal redress. Rather, under the version of the facts contained in Collopy's complaint, Knott, in retaliation for Collopy's comment concerning possible civil rights violations, misled prosecutors into thinking that Collopy's children were

criminals and that Collopy was biased against the police as a result. These allegations permit the further inference that, in so doing, Knott became a primary force—indeed, the "but for" cause-behind the prosecutors' decision to file the exception and use those same kinds of materials in their own defense during the disciplinary proceedings, actions that could cause a special master of ordinary firmness to cease his protected activity and resign his position. Under these circumstances, Knott, like his counterpart in *DeLoach*, would be responsible for the repercussions of his own actions.

### 6.

In reaching this conclusion, we have carefully considered the district court's suggestion that maintaining Collopy's claim against Knott would infringe upon Knott's own First Amendment right to comment upon judicial proceedings. *See* Order at 9 ("From a policy perspective, it is clear that permitting Mr. Collopy's claim would have the reverse, and undesirable, effect of chilling governmental agencies' ability and willingness to challenge a special master's impartiality when warranted."). By holding that Collopy's complaint states a retaliation claim, we do not suggest that an individual can incur section 1983 liability solely by criticizing a judicial or quasi-judicial decision absent retaliatory intent. When such criticism is

prompted by retaliatory intent and mischaracterizes facts, however, the speaker may be exposed to liability for a constitutional violation under certain circumstances. Collopy's complaint alleges such circumstances, and while their truth remains to be proven, those allegations state a claim of unconstitutional retaliation.[3]

### IV.

We conclude that Collopy's complaint adequately states a claim on which relief can be granted. Accordingly, the decision of the district court is REVERSED and REMANDED.[4]

---

**3.** Collopy asserted in his complaint that Chief Knott was a final policymaker and that the City of Hobbs was therefore liable for his actions. Complt. ¶¶ 6, 46. In light of its conclusion that Collopy had failed to state any constitutional claim against Knott, the district court found that there was no basis for municipal liability against the City. *See* Order at 16 (citing *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir.1996)). Our holding regarding Knott's possible liability under section 1983 thus revives the prospect of municipal liability. The parties, however, did not address this issue in their briefs or at oral argu-

ment. Therefore, we likewise refrain from discussing it, and leave the matter to the district court should Collopy decide to pursue his claim against the City of Hobbs.

**4.** The defendants' motion to dismiss did not assert qualified immunity as a basis for dismissal, and the district court did not address the issue. Collopy argues in his brief that qualified immunity does not bar his complaint, but the defendants do not respond. We decline Collopy's invitation to discuss qualified immunity at this time.