MURPHY, Circuit Judge,
joined by PAUL KELLY, JR., HARTZ, O’BRIEN, and TYMKOVICH, Circuit Judges, dissenting.
I. INTRODUCTION
This court sua sponte set this case for initial en banc review, 28 U.S.C. § 46(c), and ordered the parties to brief the following question: Do we have subject matter jurisdiction to resolve a sentencing appeal when the parties have entered into a plea agreement with an appeal waiver clause? Although it may seem mundane and purely technical to some, this question goes to the very foundation of our constitutional scheme. See Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (“The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects.”); see also generally Erwin Chemerinsky, Federal Jurisdiction § 2.1 (4th ed.2003) (emphasizing importance of justiciability doctrines in maintaining separation of powers, preserving judicial resources, improving judicial decision-making, and promoting fairness).
In an opinion that seems to resolve the question of Article III jurisdiction too easily, the majority first holds that this appeal continues to present the court with a justiciable case or controversy because *1334 this court has “the power to grant a legally cognizable remedy requested by a party — namely, voiding the plea agreement.” Majority Op. at 1323. In an apparent disconnect from this jurisdictional basis, however, the majority then proceeds to the question whether this court should exercise its discretion to take up the merits of Hahn’s sentencing appeal, after having already concluded that Hahn knowingly and voluntarily entered into a valid waiver of appellate rights and that the matter Hahn seeks to appeal falls within the scope of that waiver. Majority Op. at 1328-29.
Because a valid waiver of appellate rights settles a sentencing dispute, thereby rendering nonjusticiable all matters within the scope of the waiver, the majority is incorrect in holding that this court has jurisdiction over the merits of Hahn’s sentencing appeal. More specifically, the majority’s determination that this case is generally justiciable because this court has the power to void the plea agreement is incorrect. Instead, as set out in this court’s existing precedents, questions regarding the validity and scope of an appeal waiver are evaluated pursuant to this court’s inherent jurisdiction to determine its own jurisdiction. Once that analysis is complete and it is determined that the appeal waiver is valid and the matter sought to be appealed is within the parameters of the waiver, the merits of the sentencing appeal must be dismissed as moot. Within this framework, rather than the one employed by the majority, Hahn’s appeal waiver was knowingly and voluntarily entered as part of his plea agreement and the matter sought to be appealed falls within the scope of the waiver. Thus, Hahn’s sentencing appeal is moot and this case should be dismissed for lack of Article III jurisdiction.
II. ANALYSIS

A. A Valid Appeal Waiver Deprives this Court of Jurisdiction Over All Matters Within the Scope of the Waiver

1. Article III Jurisdiction

In United States v. Rubio, 231 F.3d 709 (10th Cir.2000), the defendant pleaded guilty to conspiring to traffic in methamphetamine; he entered into a plea agreement containing the following waiver of appellate rights: “The Defendant agrees to waive his right to appeal the sentence he receives as a result of this Plea Agreement.” Id. at 711 (quotation omitted). When the district court denied him a downward adjustment to his offense level under the United States Sentencing Guidelines for a mitigating role in the offense, the defendant appealed. Noting the existence of the waiver of appellate rights, the Rubio panel began by explaining that this court “would certainly overreach [its] jurisdiction to entertain this appeal [if] the plea agreement deprived Defendant of the right to appeal.” Id. To emphasize this point, the Rubio panel concluded that it must address the issue despite the government’s failure to raise it in a timely manner “because we have an independent obligation to examine our subject matter jurisdiction.” Id. at 711 n. 1; see also id. (“The Government may properly argue the waiver provision is a complete bar to Defendant’s appeal, deprives us of jurisdiction, and requires dismissal.”). Nevertheless, the Rubio panel held that this court always has “jurisdiction to determine [its own] jurisdiction.” Id. at 711. Accordingly, “[t]o avoid dismissal of his appeal,” the burden was on the defendant to “show why [this court] should not enforce the waiver provision of the plea agreement.” Id.
The court in this case ordered initial en banc consideration to determine the continuing viability of Rubio’s holding that a *1335 waiver of appellate rights deprives this court of subject matter jurisdiction over sentencing appeals. Id. The majority proceeds to overrule Rubio and replace it with the following one-size-fits-all rule: “[W]e hold that this Court has both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his appellate rights in an enforceable plea agreement.” Majority Op. at 1324. Having determined that valid appeal waivers do not implicate this court’s subject matter jurisdiction, the majority then moves on to adopt a “contract analysis tempered by public policy” to determine whether to enforce an appellate waiver. Id. at 1324-28. The problem with the majority opinion is three-fold: (1) the majority offers no rationale at all for treating settlement agreements in the criminal context differently than settlement agreements in the civil context; (2) the majority’s assertion that the merits of Hahn’s sentencing appeal are justiciable simply because the court could choose to void the appeal waiver is not supported by applicable precedent; and (3) the majority’s one-size-fits-all rule is untethered from its jurisdictional rationale in this case and, furthermore, simply will not apply in every case.
Unfortunately, the majority rejects the government’s equation of appeal waivers in criminal cases to settlement agreements in civil eases with almost no analysis of the underlying basis for plea agreements. See Majority Op. at 1322-23. This is odd for at least the following two reasons. First, plea agreements and the promises contained therein, just like settlement agreements, are governed by contract principles. United States v. Rockwell Int’l Corp., 124 F.3d 1194, 1199 (10th Cir.1997); United States v. Cooper, 70 F.3d 563, 565 (10th Cir.1995). Second, the very foundation of the analytical model adopted by the majority is the determination that appeal waivers must be evaluated pursuant to a contract analysis. Majority Op. at 1324-25.
A waiver of appellate rights is a contract between the defendant and the government, for due consideration, to either completely or partially settle all sentencing matters by submission to the district court for a final, binding determination. In this case, for instance, Hahn agreed to plead guilty to counts three, four, five, six, fifteen, and sixteen of the indictment; to plead no contest to count fourteen of the indictment; and to waive the right to appeal any sentence imposed by the district court within the maximum provided in the statutes of conviction. In exchange, the government stipulated that Hahn had clearly demonstrated an affirmative acceptance of responsibility for his criminal conduct for purposes of a downward adjustment under U.S.S.G. § 3E1.1 and agreed to dismiss all remaining counts of the indictment at the time of sentencing.
“With limited exceptions, a settlement involving all parties and all claims moots an action.” Tosco Corp. v. Hodel, 804 F.2d 590, 592 (10th Cir.1986) (citing 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.2, at 233 (2d ed.1984) [hereinafter “Wright & Miller”]). “This principle applies to all final settlement agreements even if they contain executory terms.” Id. Likewise, when the parties enter into a partial settlement encompassing specific issues, no live case or controversy remains as to those specific issues. See 13A Wright & Miller § 3533.2, at 234 (“A partial settlement moots the issues involved in the settlement, but not those that the parties did not intend to settle.”).
The power of the federal judiciary to act is specifically limited to live cases or controversies between the parties to the litigation. U.S. Const, art. Ill, § 2. The “irreducible constitutional minimum of standing” has three requirements: injury in fact, *1336 causation, and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). “This triad ... constitutes the core of Article Ill’s case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.” Steel Co., 523 U.S. at 103-04, 118 S.Ct. 1003 (footnote omitted). “[Mjootness [is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).” United States Parole Comm’n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quotation omitted).
An appellant who has either partially or completely waived his right to appeal in exchange for concessions on the part of the government does not suffer an injury in fact within the meaning of Article III as to any matter within the scope of the appeal waiver. Although a genuine dispute existed between the parties at all points until the entry of the guilty plea, the dispute was settled by the defendant’s entry into the plea agreement. Cf. 13A Wright & Miller § 3533.2, at 231 (“Mootness problems arise from a wide array of circumstances in which the plaintiff has secured the requested relief by some means other than final decision of the litigation, or has abandoned the quest.”). A defendant who has waived his appeal rights is contractually bound to accept the determinations made by the district court following a sentencing hearing and, as long as that contract is valid, any opinion by this court would merely be advisory.[1] Id. § 3533.2, at 234 (“[M]ootness questions should be *1337 answered according to the intent of the parties and more general contract principles.”).[2] Thus, a defendant like Hahn who has waived his appellate rights is not aggrieved in the Article III sense by an adverse ruling at sentencing; that is the exact risk he accepted when he entered into the appeal waiver.
Because the majority cites no support for its implicit assertion that criminal settlements are somehow different in effect than civil settlements when it comes to the question of mootness, it is forced to rely solely on Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), for the broad proposition that “this case is not moot because we have the power to grant a legally cognizable remedy requested by a party — namely, voiding the plea agreement.” Majority Op. at 1324. As this court’s opinion in Rubio made clear, this court always has “jurisdiction to determine [its] own jurisdiction.” 231 F.3d at 711. Accordingly, in an appropriate case, as set out more fully below, it may be necessary to analyze whether the plea agreement is invalid and whether the matter sought to be appealed is within the scope of the waiver in order to determine whether a particular appeal presents a justiciable case or controversy and thus invokes this court’s jurisdiction. The mere fact that one or more aspects of a case are justicia-ble does not mean, however, that all aspects of the ease are justiciable. See Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272, 1277 n. 4 (10th Cir.2002) (holding that although plaintiffs claims for damages were not moot, their claims for injunctive relief were moot); Smith v. Plati, 258 F.3d 1167, 1179 (10th Cir.2001) (“An issue becomes moot when it becomes impossible for the court to grant any effectual relief whatsoever on that issue to a prevailing party.” (quotation omitted) (emphasis added)).
This court’s decision in Smith is particularly instructive. In Smith, the plaintiff filed a complaint in state court alleging that the defendants had violated both his First Amendment rights and state law. 258 F.3d at 1172-73. After the defendants removed the case to federal court, the plaintiff commenced a virtually identical action in state court, omitting the federal claims so that the action could not be removed to federal court. Id. After discovering the parallel state action, the district court ordered the plaintiff to dismiss it. Id. at 1173. The district court then dismissed the plaintiffs complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Id. On appeal, the plaintiff asserted that the district court had erred in dismissing his First Amendment claims and in ordering him to dismiss the parallel state action. Id. This court affirmed the dismissal of the plaintiffs First Amendment claims and then concluded that the merits resolution mooted the plaintiffs appeal of the district *1338 court’s order that plaintiff dismiss his parallel state action. Id. at 1179. According to the court
[Defendant] objects that the district court erred when it ordered him to dismiss the state court action which asserted virtually identical claims. Given that we affirm the dismissal of [defendant’s] substantive claims, we hold that the issue is moot. An issue becomes moot when it becomes impossible for the court to grant “any effectual relief whatsoever” on that issue to a prevailing party.
[Defendant] had an opportunity to fully and fairly litigate the state law claims in federal district court and to raise those issues on appeal. Those claims are now disposed of and any subsequent litigation would be barred by res judica-ta.
Id. (citations omitted).
As Smith makes clear, the mere fact that some aspect of a case is justiciable does not mean that all aspects of that case are justiciable. Like in Smith, the conclusion embraced by the majority that Hahn’s appeal waiver is valid and that the substantive sentencing matter sought to be appealed is within the scope of the waiver, deprives this court of the ability to grant Hahn any effective relief as to his sentencing appeal. The proper course, then, is to dismiss Hahn’s sentencing appeal as moot. The majority’s contrary determination— that the entire ease is justiciable because the court could hypothetically grant Hahn’s request to void the plea agreement — simply finds no support in the cases cited by the majority.[3]
Upon ruling that this entire appeal is justiciable simply because this court could void the plea agreement, the majority then takes a giant step beyond in announcing a broad jurisdictional rule unrestricted by the facts of this case. The majority repeats on two occasions that “an appeal *1339 challenging the enforceability of an appellate waiver is not moot because we have the power to afford the legally cognizable relief — voiding the plea — requested by a party.” Majority Op. at 1324; see also id. at 1324. Unfortunately, the majority then states a broad jurisdictional holding untethered from this rationale: “[W]e hold that this Court has both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his appellate rights in an enforceable plea agreement.” Id. at 1324 (emphasis added). The majority’s broad, concluding assertion that it has jurisdiction over all sentencing appeals involving an “enforceable” plea agreement simply cannot be squared with its underlying assertion that this appeal is justiciable because, and only because, this court can afford Hahn a remedy that he specifically requested — the voiding of his plea agreement. It is unlikely that every defendant seeking to appeal a district court sentencing decision in the face of an appeal waiver will assert that the plea agreement is invalid. In such cases, under the majority’s own rationale, the appeal should not be justiciable because no party has requested that the plea agreement be voided. See Majority Op. at 1323-24; see also id. at 1323 (distinguishing Tosco on the following ground: “In that case, neither named party challenged the validity of the settlement agreement; thus we could not have granted ‘any effectual relief whatsoever’ to the parties without voiding the settlement itself, which neither party sought.”).[4] Thus, the majority has compounded its error in asserting that all aspects of this appeal are justiciable merely because one aspect of the appeal is justiciable by concluding its jurisdictional analysis with an exceedingly expansive assertion of jurisdiction untethered from its underlying rationale.

2. Statutory Jurisdiction

The conclusion of this dissent that a valid waiver of appellate rights moots a sentencing dispute, thereby rendering non-justiciable all matters within the scope of the waiver, makes it unnecessary to ana *1340 lyze whether such waivers have any impact on this court’s statutory authority under 18 U.S.C. § 3742 to review district court sentencing decisions. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578, 584-85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (holding “that there is no unyielding jurisdictional hierarchy” mandating that questions of subject matter jurisdiction be resolved before questions of personal jurisdiction); Boyce v. Ashcroft, 268 F.3d 953, 955 (10th Cir.2001) (relying on Ruhrg-as to hold that this court was entitled to dismiss case on Article III mootness grounds instead of determining whether district court had statutory authority to entertain 28 U.S.C. § 2241 petition). As a consequence, this dissent offers no view on this question. Nevertheless, it is important to note serious problems inherent in the majority’s conclusion that it retains statutory jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, without regard to § 3742.
First, the majority’s assertion that § 1291 continues to authorize sentencing appeals in the face of § 3742 is highly suspect in light of the Supreme Court’s decision in United States v. Ruiz, 536 U.S. 622, 627-28, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). In Ruiz, the Court addressed the validity of a plea agreement in which the defendant waived the right to receive from the prosecutor exculpatory impeachment material and information relating to affirmative defenses the defendant might raise at trial. Id. at 628, 633, 122 S.Ct. 2450. Before addressing the merits of the defendant’s contention, the Court noted “a question of statutory jurisdiction potentially blocks our consideration of the Ninth Circuit’s constitutional holding.” Id. at 626, 122 S.Ct. 2450. After identifying § 3742 as the operative statutory basis for sentencing appeals, the Court noted that it only allowed sentencing appeals in four specific situations. Id. at 627, 122 S.Ct. 2450. The Court further noted that only one of the specified categories was potentially applicable in the case: the defendant may file a notice of appeal if the sentence was imposed in violation of law. Id. According to the Court,
Two quite different theories might support appellate jurisdiction pursuant to that provision. First, as the Court of Appeals recognized, if the District Court’s sentencing decision rested on a mistaken belief that it lacked the legal power to grant a departure, the quoted provision would apply. [United States v. Ruiz] 241 F.3d [1157], at 1162, n. 2 [(9th Cir.2001)]. Our reading of the record, however, convinces us that the District Judge correctly understood that he had such discretion but decided not to exercise it. We therefore reject that basis for finding appellate jurisdiction. Second, if respondent’s constitutional claim ... were sound, her sentence would have been “imposed in violation of law.” Thus, if she had prevailed on the merits, her victory would also have confirmed the jurisdiction of the Court of Appeals.
Although we ultimately conclude that respondent’s sentence was not “imposed in violation of law” and therefore that § 3742(a)(1) does not authorize an appeal in a case of this kind, it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction. [See United States v. Mine Workers, 330 U.S. 258, 291, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ]. In order to make that determination, it was necessary for the Ninth Circuit to address the merits. We therefore hold that appellate jurisdiction was proper.
Ruiz, 536 U.S. at 627-28, 122 S.Ct. 2450. It would be odd, indeed, for the Supreme Court to engage in this analysis if § 1291 provided the jurisdictional hook necessary for the federal appellate courts to take up *1341 sentencing appeals. Hence, Ruiz provides strong support for the notion that § 3742, the more specific jurisdictional statute, has supplanted § 1291, the general jurisdictional statute, in the arena of sentencing appeals. See Edmond v. United States, 520 U.S. 651, 657, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997).[5]
The majority attempts to sidestep Ruiz by labeling the Court’s jurisdictional discussion “dicta.” Majority Op. at 1321 n. 4. In contrast to the majority’s assertion, however, the Court specifically noted that it was necessary to undertake the jurisdictional analysis before it could reach the merits of the appeal. Ruiz, 536 U.S. at 626, 122 S.Ct. 2450 (“[W]e note that a question of statutory jurisdiction potentially blocks our consideration of the Ninth Circuit’s constitutional holding.”). The Court then specifically concluded that because the Ninth Circuit had properly reached the merits of the sentencing appeal, jurisdiction was proper in the Supreme Court as well. Id. at 628, 122 S.Ct. 2450 (“In order to make [its own jurisdictional determination], it was necessary for the Ninth Circuit to address the merits. We therefore hold that appellate jurisdiction was proper.”). This required jurisdictional analysis is certainly not dicta. See Arizonans for Official English v. Arizona, 520 U.S. 43, 73, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (“[EJvery federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it.” (quotation and citations omitted) (alterations in original)).
Even assuming that § 1291 continues to operate as a source of statutory jurisdiction over sentencing appeals after the passage of § 3742, this conclusion provides the majority no traction. It is certainly true that prior to the enactment of 18 U.S.C. § 3742, sentencing appeals could be pursued under 28 U.S.C. § 1291. The scope of that review was, however, exceedingly narrow. See Dorszynski v. United States, 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (“[OJnce it is determined that a sentence is within the limitations set forth in the statute under which it was imposed, appellate review is at an end.”). The majority nevertheless asserts that review under § 1291 “inelude[s] an abuse of discretion review over sentencing errors.” Majority Op. at 1321. That statement is true only in the grossest sense. Courts, including this court, have uniformly held that, pursuant to § 1291, an appellate court is not entitled to vacate or modify a sentence unless the district court imposed a sentence above the statutory maximum, relied on materially incorrect information in arriving at a sentencing decision, or refused to exercise any discretion at all. United States v. Hack, *1342 782 F.2d 862, 870 (10th Cir.1986); see also, e.g., United States v. Ready, 82 F.3d 551, 555 (2d Cir.1996) (“The right to appeal a criminal conviction and sentence is statutory. Prior to the passage of the Sentencing Reform Act of 1984 (the 1984 Act’), ... criminal appeals were taken pursuant to 28 U.S.C. § 1291.... The right to appeal a sentence under § 1291 was limited to sentences that were imposed above statutory limits, that were the result of material misinformation, or that were based on a constitutionally impermissible factor.”); United States v. Abdul-Hamid, 966 F.2d 1228, 1231 (7th Cir.1992) (“Appellate review of sentences under pre-SRA law was extremely narrow: A sentence which is within the limits established by statute under which it is imposed will not be vacated upon review unless the sentencing judge relied upon improper considerations or unreliable information in exercising his discretion or failed to exercise any discretion at all in imposing the sentence.” (quotation omitted)). In Vasquez v. Cooper, 862 F.2d 250, 255 & n. 4 (10th Cir.1988), this court specifically noted the exceedingly narrow nature of sentencing review under § 1291 and indicated that the narrowness of review was “particularly true regarding substantive review of a trial court’s sentencing decision.”
Unless a defendant is asserting that the district court handed down a sentence outside the statutory limits, relied on materially incorrect information in arriving at a sentence, or relied on an impermissible criterion, no relief under § 1291 is available. This leaves the court no room under § 1291 to correct the kind of Sentencing Guidelines errors that are likely to be raised in sentencing appeals after the passage of the Sentencing Reform Act. Only under § 3742 is such review available. Otherwise, there would have been no need for Congress to enact § 3742.
In sum, in attempting to avoid the difficult question of whether § 3742 provides jurisdiction to review a sentence when the defendant has waived appellate review, the majority has improperly minimized as dicta statements in Ruiz which could certainly be read to indicate that § 3742 is the exclusive statutory basis for sentencing appeals and disregarded an equally difficult question concerning the severely limited scope of review available under § 1291 in a situation like that present in this case.

B. Hahn’s Appeal Waiver is Valid and the Matter He Seeks to Appeal is Within the Scope of the Waiver

This dissent’s conclusion that a valid appeal waiver deprives this court of subject matter jurisdiction to adjudicate all matters within the scope of the waiver is a beginning point rather than an ending point. As set out in Rubio, this court always has jurisdiction to determine its own jurisdiction. 231 F.3d at 711. In the context of an appeal waiver, as well as settlement agreements generally, the jurisdictional inquiry subsumes two questions. First, is the appeal waiver valid? See 13A Wright & Miller § 3533.2, at 235-36 (“[Mjootness of course should not result from an agreement that ought to be set aside.”). Second, is the matter which the appellant seeks to raise on appeal within the scope of the appeal waiver? Id. § 3533.2, at 234 (“A partial settlement moots the issues involved in the settlement, but not those that the parties did not intend to settle.”). See generally Elliott, 264 F.3d at 1174-75 (undertaking this two-pronged analysis and concluding both that the appeal waiver was valid and that the matter defendant sought to appeal fell “squarely within the language of the waiver provision”). The appropriate course is to subject Hahn’s appeal to this analysis rather than to apply the enforcement analysis adopted by the majority.

*1343
1. Validity of Hahn’s Appeal Waiver

Hahn entered into a broad waiver of his appellate rights, giving up the right to appeal any sentence “within the maximum provided in the statutes of conviction.” Of course, such a waiver is valid and enforceable only if Hahn entered into it knowingly and voluntarily.[6] Elliott, 264 F.3d at 1173; Rubio, 231 F.3d at 712. Although his briefing before this court is far from clear,[7] Hahn appears to argue in his en banc supplemental brief that his appeal waiver is invalid because he did not enter it knowingly and intelligently. Both ami-cus curiae National Association of Criminal Defense Lawyers (“NACDL”) and Hahn assert that an appeal waiver can never be knowingly entered because the defendant cannot possibly know in advance what errors a district court might make in the process of arriving at an appropriate sentence. For the reasons set out in the majority opinion, Hahn is incorrect in asserting that appeal waivers are inherently unknowing and involuntary. See Majority Op. at 1326-27. Because Hahn has not offered any alternative reason to question the validity of his appeal waiver, this court should proceed to the question whether the particular issue Hahn seeks to appeal is within the scope of waiver.[8]

2. Scope of Hahn’s Waiver

This court construes “a defendant’s plea agreement according to contract principles and what the defendant reasonably understood when he entered his plea.” United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir.2003) (quotation omitted). “Like most waivers, a defendant’s waiver of his right to appeal ... his sentence is to be construed narrowly.” Id. at 1173. Furthermore, as with the interpretation of any contract, this court also applies the maxim that the agreement should be construed against its drafter, in this case the government. United States v. Brye, 146 F.3d 1207, 1210 (10th Cir.1998). While the majority’s resolution that Hahn’s sentencing appeal is within the scope of the waiver *1344 is correct, a more extensive analysis is necessary as part of the jurisdictional examination set out in this dissent.[9]
It is appropriate to begin by emphasizing the requirement that courts narrowly interpret plea agreements according to the reasonable understanding of the parties at the time the agreement was entered. This requirement seriously blunts the criticism that such waivers “could encourage a lawless district court to impose sentences in violation of the guidelines.” United, States v. Raynor, 989 F.Supp. 43, 45 (D.D.C.1997) (quotation omitted). No defendant entering into an appeal waiver, even a broadly worded waiver like the one before the court in the instant case, could be said to reasonably understand that he is giving the district court license to utilize an impermissible criterion at sentencing, such as race, religion, or sex; to hand down a sentence in excess of the statutory maximum; or to refuse or fail to undertake a good faith effort to sentence the defendant pursuant to the Sentencing Guidelines and otherwise applicable law. Cf. United States v. Yemitan, 70 F.3d 746, 748 (2d Cir.1995) (“[A] sentence tainted by racial bias could not be supported on contract principles, since neither party can be deemed to have accepted such a risk or be entitled to such a result as a benefit of the bargain.”); Melvin A. Eisenberg, Mistake in Contract Law, 91 Cal. L.Rev. 1573,1628 (2003) (“[I]n contracting, as in other parts of life, some things go without saying. And a central characteristic of things that go without saying is — they are not said.”). Although it is unnecessary in resolving this case to fully catalog the list of situations in the latter category where it could be said that the district court refused or failed to undertake a good faith effort to sentence the defendant pursuant to the Sentencing Guidelines and otherwise applicable law, the following is a nonexclusive example: the parties to an appeal waiver could not reasonably anticipate that the district court would ignore binding Supreme Court or Tenth Circuit precedent identified by the defendant in arriving at an appropriate sentence under the Guidelines or otherwise applicable law.[10] Furthermore, as *1345 noted above, an appeal waiver that actually vested power in the district court to act in such a lawless fashion — through the use of an impermissible factor in sentencing, the imposition of a sentence above the statutory maximum, or the refusal to undertake a good faith effort to arrive at an appropriate sentence under the Guidelines or otherwise applicable law — would be facially void.
A reasonable defendant understands that arriving at a sentence under the Sentencing Guidelines and applicable statutes is a difficult technical endeavor subject to much dispute at the margins of binding precedent. Both the government and the defendant realize that they may come out on the short end of such a resource-consuming process. The government is willing to make sentencing concessions in order to increase certainty and decrease the expenditure of resources. The defendant is willing to concede appellate rights in order to increase certainty and receive a reduced sentence. In so doing, both parties must reasonably understand that the district court might well make erroneous factual findings and, in the absence of binding precedent identified by the defendant, erroneous legal rulings. As noted above, within these parameters, this bargained-for-exchange constitutes a valid waiver of a defendant’s appellate rights. With these considerations in mind, it is appropriate to turn to the waiver in the instant case.
Hahn’s scope argument is particularly narrow. Hahn asserts that the district court made two types of decisions at sentencing in this case. First, the district court arrived at a Guidelines sentence of 292 months’ imprisonment on the sexual exploitation charges. Hahn specifically concedes that any challenge to the district court’s calculations in arriving at this sentence falls squarely within the scope of his appeal waiver. See Hahn Panel Reply Br. at 2. Second, the district court concluded that it was obligated to impose the sentence in the sexual exploitation case consecutively to the sentence previously imposed in the marijuana and firearms case. *1346 Hahn emphatically asserts that this decision is beyond the scope of the appeal waiver. Id. at 1-3. Hahn’s argument that this second aspect of the district court’s sentencing decision falls outside the scope of his appeal waiver is unconvincing.
The text of Hahn’s appeal waiver is broad. Hahn “knowingly waive[d] the right to appeal any sentence within the maximum provided in the statutes of conviction or the manner in the which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever.” Although the scope of this broad waiver must be read in light of the reasonable expectations of the parties as elucidated above, there is no suggestion in the record that the district court relied on an impermissible factor, imposed a sentence above the statutory maximum, or failed or refused to arrive at an appropriate sentence under the Sentencing Guidelines and otherwise applicable law. Instead, the question whether to impose the sentences in this case consecutively to or concurrently with the marijuana and firearms case — or, for that matter, whether the district court has discretion to impose the sentence in this case concurrently with the sentence in the marijuana and firearms case — was simply one more contested matter that the district court was required to resolve at Hahn’s sentencing hearing. There is absolutely nothing in the record to indicate that Hahn retained the right to appeal this particular sentencing question to the exclusion of all others.[11] Furthermore, as noted above in rejecting Hahn’s and NACDL’s assertions that appeal waivers can never be knowing and voluntary, it is not important that Hahn did not anticipate that this particular dispute would arise at sentencing. Instead, what is important is that Hahn understood the general parameters of the right he was surrendering. Ruiz, 536 U.S. at 629-30, 122 S.Ct. 2450. Hahn’s implicit invitation to define the scope of his appeal waiver by reference to the sentencing disputes that he actually anticipated must be rejected.
III. CONCLUSION
The practical outcome of the majority opinion, i.e., prudential dismissal of the case leaving the sentence imposed by the district court intact, roughly corresponds to the practical outcome that would result from the analytical model advocated in this dissent. The differing approaches, however, are a consequence of principled differences in the consideration of the very essence of this court’s constitutionally circumscribed power, Article III jurisdiction. Because Hahn’s appeal waiver is valid and because the matter he seeks to appeal is squarely within the scope of that waiver, this appeal does not present the court with a justiciable case or controversy. Accordingly, Hahn’s sentencing appeal should be dismissed for lack of jurisdiction. Because the majority concludes otherwise, I respectfully dissent.

. The majority's reliance on Bhattacharya v. Copple, 898 F.2d 766 (10th Cir.1990) (per curiam), to support its conclusion that Hahn's sentencing appeal is justiciable is odd. See Majority Op. at 1323-24. Contrary to the majority’s assertion, Bhattacharya did not hold that a case or controversy continued to exist despite the settlement agreement merely because a state statute permitted the trial court to exercise discretion in the awarding of attorneys’ fees. Id. at 1324. Instead, the court in Bhattacharya undertook an analysis of the scope of the settlement agreement and concluded that the parties specifically intended to incorporate the provisions of the applicable state statute, including the right to appeal, into the settlement agreement. 898 F.2d at 768-69. In fact, the scope analysis undertaken in Bhattacharya specifically recognizes that had the parties intended to give the district court unfettered discretion in deciding on the award of attorneys' fees, the case would not be justiciable:
The settlement agreement must be interpreted in light of § 7-121b, which empowers a court to approve or disapprove any attorneys' fees paid by a litigant in a medical malpractice action. Obviously, if a court disapproves, under § 7-121b, of the amount of attorneys’ fees to be paid by a litigant, that is an adverse determination which is reviewable. Given the district court's role in this case under § 7-12 lb, the attorneys' fees provision of the settlement agreement must be read as contemplating that role and merely suggesting $450,000.00 as reasonable attorneys’ fees, but not agreeing in advance to the district court's ultimate determination under § 7-121b. We simply are not persuaded that the attorneys’ fees provision of the settlement agreement contains any expression of intent to convert the district court into an arbitrator or umpire whose determination with respect to attorneys’ fees was agreed to in advance by the parties. Instead, the settlement agreement recognized the independent determination the district court was required to make under § 7-121b. The determination ultimately made was adverse to plaintiffs’ attorneys. Under these circumstances, there is an appealable judgment, and the merits of the arguments raised by plaintiffs' attorneys will be reached on appeal.
Id. Unlike in Bhattacharya, the parties in this case did specifically contemplate and intend to vest the determination of sentencing questions, like the merits issue in this case, exclusively in the district court. See Majority Op. at 1328 ("Mr. Hahn's argument — that the district court failed to recognize its discretion to impose the sentence in this case concurrently *1337 with the sentence in the marijuana-and-firearms case — unambiguously falls within the scope of this waiver. Moreover, nothing in the record indicates that he retained the right to appeal this sentencing question.”). Accordingly, in contrast to the majority's assertions, Bhattacharya actually supports the conclusion that the merits of Hahn's sentencing appeal are moot.

. For this reason, it seems odd for the majority to assert that Rubio is inconsistent with this court’s decision in United States v. Black, 201 F.3d 1296, 1301 (10th Cir.2000). See Majority Op. at 1318. The use of contract principles in Black to determine whether a live dispute existed between the parties was perfectly consonant with the determination in Rubio that an otherwise valid appeal waiver deprives this court of subject matter jurisdiction over all issues within the scope of the waiver. Furthermore, as set out more fully below, merely because this court will closely scrutinize an appeal waiver to make sure that it is not void as against public policy does not mean that a valid waiver, like the one at issue here, does not render nonjusticiable all matters within the scope of the agreement.

. Nor does the Supreme Court’s decision in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), support the majority's conclusion that this case is generally justiciable because this court could possibly void the plea agreement. In Sibron, the defendant pleaded guilty in New York state court to possession of heroin, but expressly preserved his right to appeal the trial court's denial of his motion to suppress the heroin. Id. at 44-45, 88 S.Ct. 1889. Before his appeal could be decided by the Supreme Court, the defendant’s sentence expired. Id. at 50, 88 S.Ct. 1889. In rejecting the contention that the appeal was mooted by the expiration of the defendant's sentence, the Court concluded that because criminal convictions are presumed to entail collateral legal consequences, and because those consequences would be eliminated by a ruling in the defendant’s favor, the appeal was not moot. Id. at 54-58, 88 S.Ct. 1889. It must be noted that in Sibron the " 'possibility' " that preserved the case from the " limbo of mootness,’ " Majority Op. at 1323 (quoting Sibron, 392 U.S. at 55, 88 S.Ct. 1889), was the possibility that the defendant would suffer some consequence in the future flowing from the conviction. See generally Spencer v. Kemna, 523 U.S. 1, 8-14, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (discussing Sibron and noting that its presumption of collateral consequences would not be expanded beyond the narrow confines of that case).
Unlike the defendant in Sibron who preserved his right to appeal the adverse suppression ruling before entering into the guilty plea, Hahn specifically contracted away his right to challenge the sentence handed down by the district court. Thus, although the consequences of the district court's sentencing ruling are direct, Hahn is not aggrieved by them in the Article III sense because he received the very thing he bargained for: he received the benefits of a three-point reduction in his base offense level and the dismissal of several counts of the indictment in exchange for agreeing to have the district court be the final arbiter of any sentencing disputes. In order to reach the merits of Hahn's sentencing appeal, this court must first determine that the plea agreement, and hence the appeal waiver, is invalid. Having concluded otherwise, Hahn's sentencing appeal is moot. Sibron is not to the contrary.

. In fact, Hahn's own arguments in this regard have presented this court with a moving target. In his three-judge panel reply brief, Hahn specifically indicated that he was not attempting to invalidate the plea agreement on the ground that it was unknowing or involuntary. Hahn Reply Br. at 1-2 (noting that in its response brief the government had anticipated an argument by Hahn that the appeal waiver was not knowing and voluntary, labeling the government's argument as the interposition of a "straw m[a]n," and affirmatively noting that he "does not seek to withdraw his plea"). Although Hahn did state in passing in his panel reply brief that the appeal waiver was not knowing and voluntary to the extent it would prohibit this particular appeal, his arguments were clearly directed to the scope of the appeal waiver rather than its validity. Id. at 4 ("Here, it was clear from the record that Mr. Hahn had not contemplated waiving his right to appeal the district court's incorrect interpretation of the law as requiring that the sentence in this case be imposed consecutively to a previous, unrelated case. Thus, at least as to that aspect of the district court's sentencing order, Mr. Hahn's waiver cannot be said to have been knowing and voluntary.” (record citation omitted)).
In his supplemental en banc brief, however, Hahn appears to have changed tack. He notes generally that some courts and commentators have questioned whether a defendant can ever knowingly waive an appeal of unforeseen error, and then specifically asks this court to conclude that "the matter appealed is beyond the scope of the waiver, and that the waiver was not knowingly and intelligently entered into, and ... grant Mr. Hahn the relief requested, both on the waiver and on the substantive grounds.” Hahn Supp. Br. at 17, 25. In light of this language in Hahn’s supplemental en banc brief, the majority chooses to address the question whether Hahn’s appeal waiver was knowingly entered. Under the majority's jurisdictional rationale, this procedural history creates an interesting question: Was the case as presented to the three-judge panel justiciable?

. This is not to say, however, that § 3742 has repealed § 1291 by implication. As noted in the majority opinion, " 'An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter act covers the whole subject of the earlier one and is clearly intended as a substitute.' " Majority Op. at 1321 (quoting Branch v. Smith, 538 U.S. 254, 123 S.Ct. 1429, 1441, 155 L.Ed.2d 407 (2003) (citations and quotations omitted)). Section 3742 is directed specifically to sentencing appeals and authorizes a level of sentencing review never previously available prior to the passage of the Sentencing Reform Act; section 1291 applies to civil appeals and to many types of appeals in criminal cases not involving sentencing. In these circumstances, the specific provision authorizing sentencing appeals controls over the general provision authorizing appeals from final orders in criminal and civil cases. Edmond v. United States, 520 U.S. 651, 657, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997).

.In addition to holding that an appeal waiver is not valid unless the defendant’s acceptance of the waiver is knowing and voluntary, this court indicated in Elliott the following:
[A] defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. Appellate waivers are subject to certain exceptions, including where the district court relied on an impermissible factor such as race, where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, where the sentence exceeds the statutory maximum, or where the waiver is otherwise unlawful.
264 F.3d at 1173 (quotation and citation omitted). Of course, it is beyond question that any appeal waiver which explicitly empowered the district court to utilize an impermissible criterion at sentencing, such as race, religion, or sex; to impose a sentence in excess of the statutory maximum; or precluded a defendant from asserting that the plea agreement was entered into without effective assistance of counsel, would be facially invalid. Id. Because, however, Hahn has not challenged the validity of his appeal waiver on any of these grounds, this court need not further delineate the parameters of these exceptions to the general rule that "[a] defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable.” Id.

. See supra n. 4 (discussing evolving nature of Hahn’s arguments on appeal).

. Hahn’s challenge to the validity of his appeal waiver is limited to the narrow assertion that all such waivers are invalid as a matter of law because of their prospective nature. He does not challenge the validity of his particular appeal waiver on the basis that it was not, in fact, knowingly and voluntarily entered. Accordingly, it is unnecessary to consider whether such a claim can be raised on direct appeal or, instead, whether it must be raised in a 28 U.S.C. § 2255 proceeding after the defendant has developed the factual basis for such a claim.

. The majority's placement of the scope analysis in its three-prong enforcement analysis does, however, appear flawed. Resolution of whether an issue sought to be appealed is within the scope of an appeal waiver seems wholly unrelated to the validity, and hence enforceability, of an appeal waiver. Furthermore, the considerations identified by the majority in the miscarriage-of-justice prong of its "contract analysis tempered by public policy" are more appropriately and circumspectly considered as part of validity and scope components of an analysis of whether this court has jurisdiction over the merits of Hahn’s sentencing appeal. The scope analysis set out in this dissent focuses exclusively on the parties' intent in entering into an appeal waiver, leaving this court little opportunity to rewrite a plea agreement to the benefit of a defendant who has waived his appellate rights. Under the miscarriage-of-justice prong of the majority's appellate waiver enforcement analysis, this court is empowered to relieve the defendant of his obligations under a plea agreement simply because the court feels that the consequences of a sentencing error on the part of the district court are too severe. The unfortunate consequence of the majority's approach is two-fold. First, it encourages defendants to appeal in cases in which they have executed an appeal waiver, hoping that this court will exercise its discretion to correct what the defendant inevitably views as an egregious sentencing error. Second, it discourages the government from entering into plea agreements containing appeal waivers because there is no guarantee that it will actually receive the benefit of the bargain it struck. The majority's utilization of a discretionary approach to the enforcement of appeal waivers and the adoption of a miscarriage-of-justice exception to the enforcement of waivers will ultimately discourage the use of appeal waivers, a resource that benefits defendants, the government, and society at large. See United States v. Elliott, 264 F.3d 1171, 1174 (10th Cir.2001).

. To be clear, the term "binding precedent" means Supreme Court or Tenth Circuit precedent that compels a particular outcome. This *1345 overlay on the scope doctrine will not swallow appellate waivers. Unless it can be fairly said that a Supreme Court or Tenth Circuit decision dictates a particular result, a reasonable defendant entering into an appeal waiver has necessarily accepted the risk that the district court might decide the sentencing question, although anticipatory, erroneously and in a manner adverse to the defendant. In setting out the contours to this limitation on the scope of appeal waivers, the case law interpreting the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 provides a useful analogy. 28 U.S.C. § 2254(d)(1) provides that a federal court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court adjudication of the claim "resulted in a decision that was contrary to ... clearly established Federal law, as determined by the Supreme Court.” A state court's decision is "contrary to” clearly established Supreme Court precedent only if the court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases” or if the court "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [Supreme Court] precedent.” Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). This standard perfectly captures the reasonable expectations of the parties to an appeal waiver. The parties reasonably proceed with an understanding that the district court will faithfully apply the Sentencing Guidelines or otherwise applicable law in arriving at a defendant's sentence and, in so doing, will not reach a result that is "contraiy to” binding Supreme Court or Tenth Circuit precedent. By the very nature of entering into the waiver, however, the defendant must also recognize that each sentencing proceeding is somewhat novel and typically requires the resolution of legal questions for which there is no binding precedent from either the Supreme Court or this court. In those circumstances, the defendant assumes the risk that the district court might very well reach an erroneous conclusion.

. Hahn does note that at the sentencing hearing his counsel indicated that he believed Hahn was entitled to appeal this question despite the appeal waiver. Nevertheless, these self-serving statements made after the entry of the appeal waiver and the district court's acceptance of the guilty plea cannot overcome the plain language of the appeal waiver.